STATE EX REL. FORD HOPKINS COMPANY, Appellant, vs. MAYOR and COMMON COUNCIL OF CITY OF WATERTOWN, Respondents.

*October 13—December 7, 1937.*

218

For the appellant there was a brief by *Kenneth E. Port* of Watertown, attorney, and oral argument by *Mr. Port* and *Mr. Harry H. Ruskin* of Chicago, Illinois, of counsel.

For the respondents the cause was submitted on the brief of *Harold W. Hartwig,* city attorney.

A brief was also filed by *Drought & Drought* of Milwaukee, attorneys for the Wisconsin Restaurant Association, as *amicus curiæ*.

MARTIN, J. The material provisions of the city ordinance approved January 9, 1936, are:

Section 286.01. "It shall be unlawful to operate or conduct a hotel or restaurant within the city of Watertown, unless a license therefor shall have been obtained from the common council of the city of Watertown."

Section 286.02. "The term 'Restaurant' as used in this article shall include every place which is open to the public generally, and where food or foodstuffs, other than ice cream and candies, is sold or served for consumption on the premises, either for compensation or gratis."

Section 286.07. "No license shall be issued to conduct, operate or maintain any restaurant.

"(a) Where the restaurant is operated in connection with any other business, except a hotel, unless there is a solid partition without any openings of any kind therein, from the floor to the ceiling separating the restaurant from such other business.

"(b) Where it appears that any dishes and silverware used in the operation of serving of food are not sterilized as required by the health commissioner of the city of Watertown.

"(c) Where any drugs or chemicals are mixed, dispensed or sold in any part of the premises to be occupied by said restaurant.

"(d) The provisions of this section shall apply *only to restaurants commencing business after the effective date of this section.*"

The ordinance further provides that:

"Nothing in this article shall prohibit the sale of cigars, cigarettes, newspapers, candies, ice cream and beverages either in any restaurants or in any other business place where the same may now be sold and disposed of."

The ordinance contains a severability clause which provides :

"If any one of the provisions hereof shall be deemed unconstitutional, the validity of any of the remaining provisions shall not be affected thereby."

A violation of any of the provisions is made a misdemeanor punishable by fine of not less than $10 or more than $100, or by imprisonment in the county jail not to exceed thirty days, or by both such fine and imprisonment.

Appellant's first contention is that it had commenced business prior to the effective date of the ordinance by reason of having entered into the lease of the premises in question on the 7th day of January, 1936. In other words, that procuring the lease was the commencement of a restaurant business at the location designated in the lease. The ordinance is designated to regulate the restaurant business, not such preliminaries as obtaining a lease of the building or premises. There is no merit in this contention.

The appellant contends that subsections (a), (c), and (d), quoted above, are class legislation, contrary to the due-process-of-law provisions of sec. 1, art. I, of the state constitution and contrary to sec. 1 of the Fourteenth amendment of the federal constitution, in that said subsections deny it, as against other citizens, the equal protection of our laws. The appellant concedes that the city council, under the police power delegated to every municipal corporation under the "home-rule" act, has the right to legislate for the protection of the public health and the promotion of the general welfare of the community, but contends that the police power cannot be used as a guise to accomplish some unconstitutional end; that regulations must at all times be reasonable; that classifications cannot be based upon existing conditions only; that provision must be made for further acquisition to the class as other subjects acquire the characteristics which form

the basis of the classification. This court has applied the following general rules upon which classifications may be based in the exercise of the police power:

(1) All classification must be based upon substantial distinctions which make one class really different from another.

(2) The classification adopted must be germane to the purpose of the law.

(3) The classification must not be based upon existing circumstances only.

(4) To whatever class a law may apply, it must apply equally to each member thereof.

*Johnson v. Milwaukee,* 88 Wis. 383, 390, 60 N. W. 270.

In *State ex rel. Risch v. Trustees,* 121 Wis. 44, 54, 98 N. W. 954, 957, the same general rules are held essential for a constitutional classification, with the following addition to No. (3):

"It must not be so constituted as to preclude addition to the numbers included within a class."

And by adding a fifth rule, as follows:

"(5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation."

To the same effect, see *Borgnis v. Falk Co.* 147 Wis. 327, 353, 133 N. W. 209; *State ex rel. Brown v. Haney,* 190 Wis. 285, 286, 209 N. W. 591; *Christoph v. Chilton,* 205 Wis. 418, 237 N. W. 134; *Union F. H. S. Dist. v. Union F. H. S. Dist.* 216 Wis. 102, 107, 256 N. W. 788; *Whipple v. South Milwaukee,* 218 Wis. 395, 261 N. W. 235; *Edgerton v. Slatter,* 219 Wis. 381, 263 N. W. 83.

In *State ex rel. Risch v. Trustees, supra,* the court quotes approvingly from *Nichols v. Walter,* 37 Minn. 264, 272, 33 N. W. 800, as follows:

"The true practical limitation of the legislative power to classify is that the classification shall be based upon some

apparent natural reason,—some reason suggested by necessity, by such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity or propriety of different legislation with respect to them."

The ordinance is a health measure. The object is the protection of the public health and welfare of the people patronizing restaurants operated in connection with any other business, except a hotel. The ordinance makes the following classification:

(1) Restaurants conducted in connection with other businesses.

(a) Restaurants conducted in connection with other businesses which had commenced business prior to January 9, 1936.

(b) Restaurants conducted in connection with other businesses which commenced business after January 9, 1936.

(2) Restaurants conducted in connection with drugstores which had commenced business prior to January 9, 1936.

(a) Drugstores which can conduct restaurants.

(b) Drugstores which cannot conduct restaurants.

The danger to public health in permitting a restaurant to be conducted in connection with any other business or where any drugs or chemicals are mixed, dispensed, or sold in part of the premises occupied by a restaurant, is as great where such restaurant was so conducted prior to the passage of the ordinance as is the danger in so conducting a similar business established after the effective date of the ordinance. Under the ordinance, that part of the premises occupied and used as a restaurant after January 9, 1936, must be closed off by a solid partition from the floor to the ceiling. The ordinance grants to those engaged in operating a restaurant in connection with any other business prior to January 9, 1936, the privilege of operating the restaurant department without separating it from such other business in any manner

whatever. The ordinance denies to the petitioner and others desirous of engaging in a similar business subsequent to January 9, 1936, the right so to do unless the restaurant department is completely separated from such other business. All classification must be based upon substantial distinctions, which make one class really different from another. In the instant case, the classification appears to be based upon existing circumstances and time. In 6 R. C. L. p. 386, § 378, it is said:

". . . Unless a statute is curative or remedial, and therefore temporary, the classification must not be based on existing conditions only, but provision must be made for future acquisitions to the class as other subjects acquire the characteristics which form the basis of the classification. This principle is of considerable importance when attempts are made to draw distinctions based on time, putting in one class all the instances existing on a designated date, and placing all others in another class. Under certain circumstances, where such a procedure would discriminate unwarrantably in favor of establishments, things or persons existing, or engaged in particular occupations on a given date, the courts have held that the classification is in denial of the equal protection of the laws."

The distinction cannot be based on time nor upon any theory of impairing contractual obligations. Where public health is concerned, contracts, persons, and occupations, alike, are subject to the police power. In *Mehlos v. Milwaukee,* 156 Wis. 591, 604, 146 N. W. 882, the court said:

"There is no federal guaranty which exempts citizens of the United States from reasonable police regulations as regards person and property, *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 87 N. W. 561, or which prevents legitimate classification for the purpose of police regulation. In case of such classification and the regulation affecting all members of the class alike, there is no violation of any equality clause of national or state constitution."

Statutes requiring conditions and qualifications as to certain trades and callings, particularly those which closely concern the public health, such as the practice of medicine, dentistry, etc., may except from their requirements those engaged in the practice of their profession prior to the legislative enactment. Such exceptions proceed upon the theory that those who have acceptably followed the profession in the community for a period of years may be presumed to have the qualifications which others are required to manifest by taking an examination. *Watson v. Maryland,* 218 U. S. 173, 177, 30 Sup. Ct. 644; *Dent v. West Virginia,* 129 U. S. 114, 9 Sup. Ct. 231; 6 R. C. L. pp. 392, 397, and cases cited under note 14.

In *Weco Products Co. v. Reed Drug Co.* 225 Wis. 474, 274 N. W. 426, 433, it was contended that sec. 133.25, Stats. 1935, was void because of an arbitrary and discriminatory exemption under sub. (8) thereof, which provided:

"This section shall not apply to any co-operative society or association not organized for profit."

The court said (pp. 489–491):

"Respondent argues that if 'the primary aim of the law is to protect the property,—namely, the good will,—of the producer, which he still owns' (as the United States supreme court said in the *Old Dearborn Distributing Co. v. Seagram-Dist. Corp., supra*), then the provision in sec. 133.25 (8) Stats., exempting co-operative societies and associations not organized for profit is unreasonable and so arbitrary or discriminatory as to be violative of the Fourteenth amendment, and render the entire act void. It is true that that exemption is void if there is no proper basis because of which it can be held that such a classification is germane to the legislation under consideration. Although contracts between a co-operative society and its members have been considered of such nature, under some circumstances, as to entitle them to a peculiar status in the law because of which legislation may provide protection or exemptions in respect thereto, which

are denied to the contracts of all others (*Northern Wis. Co-op. Tobacco Pool v. Bekkedal*, 182 Wis. 571, 197 N. W. 936; *State ex rel. Saylesville C. Mfg. Co. v. Zimmerman*, 220 Wis. 682, 265 N. W. 856; *Liberty Warehouse Co. v. Burley Tobacco Growers' Co-op. Marketing Asso.* 276 U. S. 71, 48 Sup. Ct. 291, 72 L. Ed. 473), the validity of such legislation is nevertheless subject to the rule that such protection or exemptions by legislation can only be sustained when the classification and resulting protection or exemptions can be held germane to the general and public purpose and object of the particular legislation in question. *State v. Whitcom*, 122 Wis. 110, 99 N. W. 468; *State ex rel. Milwaukee S. & I. Co. v. Railroad Comm.* 174 Wis. 458, 183 N. W. 687; *State ex rel. Kempinger v. Whyte*, 177 Wis. 541, 188 N. W. 607; *Watts v. Rent-a-Ford Co.* 205 Wis. 140, 236 N. W. 521, 237 N. W. 276; *Whipple v. South Milwaukee*, 218 Wis. 395, 400, 261 N. W. 235. That cannot be held as to the exemption in question, under the facts in this case. That exemption is not confined to merely transactions between such an association or society and its members. It is equally applicable to sales made by such associations or societies in competition with other retail dealers to the public at large, but as to which such exempted associations or societies would be permitted to sell at less than minimum resale prices stipulated under the Fair Trade Act. Thus there would be defeated its 'primary aim to protect the property,—namely, the good will,—of the producer.' Consequently, that classification, instead of being germane to, is inconsistent with the general and public purpose and object of the Fair Trade Act, and therefore sub. (8) of sec. 133.25, Stats., is void because of the arbitrary and discriminatory exemption of the associations and societies mentioned therein."

In the instant case, all restaurants so engaged in business, though they be operated in connection with any other business, whether it be a drugstore, grocery store, meat market, blacksmith shop, or any other of the endless kinds and classes of business, are exempt under the provisions of the ordinance, provided they were so engaged prior to the effective date of the ordinance. All others desirous of operating a

restaurant, but commencing business after January 9, 1936, that being the effective date of the ordinance, if they wish to conduct the restaurant in connection with any other business, except a hotel, must segregate and separate the restaurant business from such other business by constructing a solid partition without any openings of any kind therein, from the floor to the ceiling. In other words, they must provide two separate places of business with separate ingress and egress.

In the brief of *amicus curiæ*, filed in support of the constitutionality of the ordinance, it is said:

"Parallels are found every day with respect to the erection of buildings. For example, buildings are standing and are being used which could not be constructed under present building codes, but that fact does not create an objectionable classification."

The restrictions in zoning ordinances, the regulation of the height of buildings, the character of the construction required, the fire hazards, and other conditions considered as constituting a menace to public health and safety, may well justify a basis of classification such as we find in *Building Height Cases,* 181 Wis. 519, 195 N. W. 544, which are readily distinguishable from the facts in the instant case.

As a health measure, is the classification, and are the exemptions, germane to the general and public purpose and object, as expressed by the terms of the ordinance? It specifically exempts restaurants operated in connection with a hotel. Such exemption is a reasonable one. Restaurants are generally operated in connection with and as a part of the hotel business. Such exemption is neither arbitrary nor discriminatory, but the exemption of all other restaurants operated in connection with other lines of business, provided they were so operated prior to January 9, 1936, cannot be held germane to the general and public purpose and object of the ordinance. To exempt all such restaurants, and to require

of those engaging in the restaurant business after the effective date of the ordinance, where the restaurant is to be conducted in connection with any other business except a hotel, that such restaurant be entirely shut off from such other business by a solid partition from the floor to the ceiling, not even permitting the use of self-closing doors in such partition, and thus necessitating a separate entrance for ingress and egress, is so unreasonable, arbitrary, and discriminatory that we must hold such provisions void.

Subsections (a), (c), and (d) of section 286.07 of the ordinance, are the only provisions challenged in this proceeding. They are separable provisions and the remainder of the ordinance would constitute a complete law by which the legislative intent and purposes thereof could be accomplished. (*Weco Products Co. v. Reed Drug Co., supra,* and cases cited.) We make the foregoing conclusions without regard to the provisions of sec. 160.02 (2), Stats., the constitutionality of which has not been raised. It is not the practice of this court to pass upon the constitutionality of a statute until the question is properly before the court.

The contention is made by respondents that there is no allegation in the petition that the common council of the city of Watertown denied petitioner's application for a restaurant license. The petition contains the following allegation:

"That such action denying a license to this petitioner on the ground that no solid partition from floor to ceiling exists in petitioner's place of business, constituted an unlawful and arbitrary discrimination against this petitioner. . . ."

Respondents' counsel contends that this allegation relates to the report of the health commissioner, in which he recommended that the application be denied. However, in respondents' motion to quash, this language is used:

"That the licensing body of the defendant city in the exercise of its discretion has refused to issue a restaurant license to the relator herein."

There is no merit in this contention.

Respondents moved to quash the alternative writ of *mandamus*. Such motion is regarded as a demurrer. *State ex rel. Karnes v. Board of Regents*, 222 Wis. 542, 269 N. W. 284. This admits the facts alleged in the petition. Taken as true, they show that the plaintiff, the appellant herein, is entitled to the relief prayed for.

*By the Court.*—Judgment reversed, and cause remanded with directions that a peremptory writ of *mandamus* be issued, commanding the defendants to issue a restaurant license to petitioner as prayed for.