STATE EX REL. O'NEIL, Appellant, v. TOWN OF HALLIE and others, Respondents.

*March 7—April 2, 1963.*

For the appellant there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll E. Metzner*.

For the respondents there was a brief by *Wiley & Devine* of Chippewa Falls, and oral argument by *Thomas Devine*.

DIETERICH, J.   The town of Hallie is located between the cities of Eau Claire and Chippewa Falls in Chippewa county. A four-lane divided highway (State Highway 53) connecting these two cities runs through the town. Zoning of the town is controlled by a Chippewa county ordinance. Sec. 59.97, Stats.

On May 7, 1960, O'Neil entered into an agreement to purchase 22 acres of land on Highway 53 in the town of Hallie. At that time the land was zoned for agricultural use. In June of 1960, O'Neil hired Richard H. Jann, an engineer, to prepare a topographic survey and map of the land, a survey of the land, and a plat of the survey. The property was re-zoned from agricultural to commercial in November of 1960,

by the Chippewa county board. O'Neil contracted for engineering plans for an outdoor theater by Davel & Kohlbeck Engineering Company in January of 1961. The plans were approved by the industrial commission of Wisconsin on April 5, 1961.

O'Neil's property is located across the highway from a fruit stand, it is adjacent to that of a construction contractor to the northeast, and within approximately one block of the O'Neil property there is a garage and a go-cart track. Two sides of the O'Neil property adjoin the property on which Gower grade school is located. This school has four classrooms and is a part of the city of Chippewa Falls school system.

O'Neil by his attorney requested a license for an outdoor theater at the April 1, 1961, meeting of the town board of Hallie. The matter was taken under advisement until the ordinance relating to the licensing of theaters could be found. At the meeting of April 21, 1961, the town board discussed a new ordinance relative to outdoor theaters.

The record discloses that the only town ordinance adopted by the town of Hallie, which was in effect on April 1, 1961, reads as follows:

"Section One. It shall be unlawful for any person, firm, or corporation to engage in or follow in the town of Hallie, any business or occupation without having a license therefor, as hereinafter provided. The fee for each license shall be the amount named after the name of the enterprise or occupation.

"1. Circuses and Animal Shows. Exhibiting a combined circus and menagerie or trained-animal show, with more than one ring or a smaller tent show or combined tent show and amusement devices, . . .

"2. Amusement Exhibition and Devices Without Circus or Animal Show. Operating amusement devices, rides, and such forms of entertainment by the use of mechanical means, . . .

"3. Theaters. Conducting or managing a theater, moving-picture house, hall, or area for the purpose of exhibiting

movies, place of such entertainment $200 per year for each theater or area operated.

"Section Two.   Licenses on an annual basis, shall end at midnight on the 31st day of December of each year; licenses for one month shall end on the last day of each month; licenses for a week shall end on the last day of each week; licenses for one day shall end at midnight on the day for which they are issued.

"Section Three.   The town clerk shall have the power to issue licenses between meetings of the town board, which licenses shall be subject to any action the town board shall take at the next meeting of the board. All licenses shall be signed by the town clerk and issued only after payment of the fee has been received.

"Section Four.   The town clerk to report the issuance of licenses at each meeting of the town board. Licenses issued by the clerk shall remain in effect until affirmed by the town board, and after affirmation by the town board shall continue to remain in effect. The town board may, for cause, revoke any license issued by the town clerk, or any license which has been issued by the town clerk and affirmed by the town board, but such action shall be taken, only after three days' notice in writing to the licensee, of the time and place where he may be heard.

"Section Five.   The town board in session may receive applications for such licenses and act thereon without previous action by the town clerk. The town clerk may, if he shall deem wise, refuse to grant a license under this ordinance, until the application has been presented to the town board.

"Section Six.   Licenses prohibited. No license shall be issued for any indecent or immoral amusement or when there is reason to believe that the amusement devices operated, the entertainment, or the business is not conducive to the safety, health, or morals of the public.

"Section Seven.   Any person or corporation violating any of the provisions of this ordinance, shall be subject to a forfeiture of $50 for each day he or it operates a business or occupation within the town, without first having obtained a license as it is required by this ordinance. In case of failure to pay said forfeiture, the person or persons in violation

whereof, will be confined in the county jail for a period not to exceed thirty days, or until such forfeiture is paid. In case the penalties set out herein are assessed in court, costs shall be taxed against the defendant."

At some time during April, 1961, pursuant to section 1, sub. 3 of the zoning ordinance, O'Neil's attorney gave his personal check for $200 to the town clerk to cover the license fee for an outdoor theater.

On May 6, 1961, O'Neil appeared in person and submitted to the town board a petition for a license to operate an outdoor theater on his property. The town board voted unanimously against granting the license.

O'Neil petitioned the county court of Chippewa county for an alternative writ of mandamus commanding the town board of Hallie to issue him a license to operate an outdoor movie theater. An alternative writ of mandamus was issued. The return to the alternative writ of mandamus gave the following reasons for refusing to issue O'Neil a license to operate an outdoor theater:

"6. Defendants allege that the town of Hallie has, according to the 1960 census, 2,530 inhabitants and there is no police protection other than one elected constable, who is not on regular duty, and is only subject to call for the purposes set out in the statutes and that the only regular police protection available is the sheriff of Chippewa county, who has but one full-time deputy in a county of 45,096 people according the the 1960 census.

"7. Further, that there is now operating in the town of Hallie one outdoor theater, which has been operating since 1952, and has more capacity for accommodating persons and automobiles than ever has been used.

"8. Further, that it has been the experience of this board that the outdoor theaters are largely attended by young people, including a high percentage of teenagers and operate without restrictions as to hours and types of productions shown and thereby creates a welfare and morals problem, which the town has no facilities to handle. It is common

knowledge, based on frequent complaints, which the town board has received from parents and other interested citizens, that young people, because of the convenience and privacy of the automobile, bring beer and intoxicants to the outdoor theater under circumstances which are beyond the power of the town board to control.

"9. Further, it has been the experience of the town board that the roads and highways in the environs of an outdoor theater are covered with litter and debris far in excess of other areas of the town, and it is the considered opinion of the town board that one outdoor theater in a town, such as the town of Hallie, situated between the metropolitan areas of Eau Claire and Chippewa Falls, is the maximum that should be allowed in the town due to noise, distractions, traffic conditions, considering the lack of police protection and control in rural areas.

"10. That due to the fact that the proposed location for an outdoor theater is adjacent to the Gower school, a grade school, part of Chippewa Falls District No. 1, that such is an undesirable location for a theater.

"11. Further, on information and belief, after petitioner appeared at the town board meeting, the impression was given that this application was not made, *bona fide,* for purpose of building an outdoor theater, but in fact, for bargaining purposes to force down the value of the present outdoor theater in the town of Hallie, and force a sale at a price which would greatly depreciate values in the area as petitioner knows, or should know, that two such theaters in the town of Hallie are economically unsound and neither could operate at a profit and hence would lead to all type of practices, such as fireworks, noise, and various special attractions attempting to gain a larger participation of the public at the theater, all of which is respectfully submitted in justification of the failure of the town board to grant petitioner's request for a license for an outdoor theater and defendants pray that the alternative writ of mandamus be quashed."

A member of the town board of Hallie filed an affidavit of prejudice for change of venue alleging that he had good reason to believe and did believe that he could not have a fair

trial in the action on account of the prejudice of the judge. The place of trial was transferred to the circuit court for Chippewa county. The circuit court for Chippewa county, by its order, appointed another circuit judge to preside at the trial and determine the issues of the action. The action was tried on September 28, 1961.

The testimony in this case reveals that one Grenges was, at the time of the trial, the owner of the Stardust theater, an outdoor theater located in the town of Hallie. This theater has been licensed annually by the town board of Hallie since 1952. The record further reveals that Grenges appeared at the April 1st and May 6th meetings of the town board of Hallie and that a petition in opposition to O'Neil's request for a license was circulated in the township. This petition is not a part of the record.

The town chairman of the town of Hallie testifed that the township had one constable, a part-time employee during the evenings. He further testified that the only police protection in the township consisted of the sheriff's department, which consisted of the sheriff and one deputy. He stated that his reason for voting against the license is that as an elected officer he is supposed to look out for the welfare of the people in the township, and that from the experience of the town board they were of the opinion that an outdoor theater is not the type of business that the people in the township would cater to or would like to have, especially in view of the fact that 408 signatures upon the petition opposed an outdoor theater. He further testified as follows:

"*Q*. . . . There is no doubt in your mind Mr. Grenges participated in the discussions at the town board meeting on May 6th prior to the time the vote was taken? *A*. Yes. I called on Mr. Grenges to get some information from him, and at that time, when he did talk, he invited Mr. O'Neil to come over and inspect his theater and he offered it for sale."

One supervisor and member of the town board testified that in his opinion another drive-in theater would make their police problems more difficult. His testimony is as follows: "We don't have any police protection there now. Just the constable and he is called out for other things. I mean, for town problems. We have no way of policing any theater."

The other supervisor and member of the town board testified as follows:

"Q. . . . how did you vote in regard to the application? A. No.

"Q. I would like to ask you to tell the court what reasons and what basis you decided to vote 'No,' to deny this application? A. Well, I just didn't think it was good for the town of Hallie to have another theater.

"Q. And could you state the basis why you didn't think it was good for the town of Hallie? A. . . . I would say it shouldn't be next to a school, and the residents are up most of the night with an outdoor theater with the cars going by. That is what I think about it."

The record reveals the following partial list of the businesses and enterprises presently existing in the town of Hallie:

"(1) One drive-in theater, (2) one go-cart race track, (3) one large manufacturing development—Presto Industries, (4) one lumberyard, (5) one golf course, (6) one dance-hall pavilion, (7) liquor and beer taverns—7, (8) fruit stands, (9) cabinet shop, (10) surplus store, (11) heating and air conditioning, (12) building-supply company, (13) motels and cabins, (14) grocery stores, (15) cheese house, (16) bowling alley, (17) pony rides, (18) bulk-petroleum tanks, (19) bulk-gas tanks, (20) egg-producing and processing plant, (21) pizza house, (22) baseball diamonds, (23) construction company, (24) stock-car racing track, (25) park area for carnivals, (26) upholstery shop, (27) marina, (28) sand-and-gravel company, (29) excavators, (30) trailer park, (31) wood-working machine plant, and (32) scrap iron and metal."

A memorandum opinion was filed by the court which stated that O'Neil was estopped to question the validity of the ordinance in that proceeding and determined that the defendants did not act arbitrarily and capriciously in denying a license to O'Neil.

O'Neil petitioned for a rehearing which was denied by an order of the court. The court filed a second memorandum opinion in which it held that the ordinance in question applied to outdoor theaters, and that the ordinance was not a revenue measure, but an exercise of the police power, and that it was not necessary for the court to decide whether or not O'Neil had the right to question the constitutionality of the ordinance.

The ordinance in question provides for the licensing of (1) circuses and animal shows, (2) amusement exhibition and devices without circus or animal shows, and (3) theaters. Section 6 of the ordinance conditions the issuance of any license upon certain standards, that the amusement shall not be indecent, immoral, or one which is not conducive to the safety, health, or morals of the public. The record reveals that the town board of Hallie was granted the power of a village board by the town electors pursuant to the provisions of sec. 60.18 (12), Stats. Sec. 61.34 (1) and (5) provides that village boards have police power. The provisions contained in section 6 of the ordinance are sufficient to put the ordinance in the category of a police-power regulation and not that of mere licensing regulation for revenue.

Under the town of Hallie ordinance for licensing theaters no requirements are made of the applicant, only of the amusement itself. The amusement must not be indecent, immoral, or one which is not conducive to the safety, health, or morals of the public. By licensing the Stardust theater, it is reasonable to conclude that the town board has determined that the entertainment offered by an outdoor theater meets the re-

quirements imposed by the ordinance. Thus, the town board must issue licenses to all applicants who wish to operate outdoor theaters unless there is evidence that the entertainment offered will differ substantially from that already offered at the existing outdoor theater. By licensing the existing outdoor theater the town board has effectively estopped itself from refusing to license other outdoor theaters unless such evidence exists.

The general rule is given in 33 Am. Jur., Licenses, p. 379, sec. 60, as follows:

"If public officials intrusted with discretion in respect of the issuance of licenses or enforcement of license requirements abuse such discretion and act arbitrarily or fraudulently, or if there is no factual basis for the conclusion reached, the courts will give relief."

It is a fundamental rule of law that arbitrary administration of an ordinance contravenes the provisions of the Fourteenth amendment to the United States constitution relating to due process and equal protection of the laws. In *Yick Wo v. Hopkins* (1886), 118 U. S. 356, 373, 6 Sup. Ct. 1064, 30 L. Ed. 220, the court said:

"Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution."

In *Caledonia v. Racine Limestone Co.* (1954), 266 Wis. 475, 480, 63 N. W. (2d) 697, this court discussed the application of equal protection of the law to classification under an ordinance as follows:

"One of the principles is that all persons are entitled to equal protection of the law, and any ordinance limiting or

restricting the right of a person to engage in a legitimate business must apply equally to all persons engaged in a like business where circumstances and conditions are similar, and that classifications of persons to be regulated must be reasonable and substantial. *In State ex rel. Ford Hopkins Co. v. Mayor,* 226 Wis. 215, 222, 276 N. W. 311, this court said: . . .

"'(4) To whatever class a law may apply, it must apply equally to each member thereof.'"

It is apparent that an ordinance must apply equally to each member of which the class consists. The court requires that such ordinances be applied with equal weight to all members of a class by the administering authority, in this action the town board of Hallie.

It is obvious that most of the objections raised by the town board to licensing a new outdoor theater were equally applicable to the existing outdoor theater which has been licensed annually since 1952. To refuse a license to O'Neil on the facts in the instant action is a denial of the equal protection of the laws and constitutes an arbitrary and capricious administration of the police power by the town board of Hallie.

*By the Court.*—Judgment reversed, with directions to the trial court to issue a peremptory writ of mandamus requiring the defendants, town of Hallie, A. N. Zimmerman, supervisor and chairman of the town board, Anton Malom, supervisor and member of the town board, Dale E. Misfeldt, supervisor and member of the town board, and Charles Bennett, clerk of the town of Hallie, to issue a license to Robert O'Neil for the purpose of operating an outdoor motion-picture theater in the town of Hallie.

WILKIE, J., took no part.