STATE EX REL. AMERICAN OIL COMPANY and others, Respondents, v. BESSENT, Building Inspector, Appellant.

*April 26—June 1, 1965.*

538

For the appellant there were briefs by *H. J. Sanville,* attorney, and *Quarles, Herriott & Clemons* and *L. C. Hammond, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Hammond.*

For the respondents there was a brief by *Hippenmeyer & Reilly* of Waukesha, and oral argument by *William F. Reilly.*

HALLOWS, J.   The village of Elm Grove is in the eastern part of Waukesha county, lying west of the cities of Wauwatosa and Milwaukee and may generally be considered as a part of the Milwaukee metropolitan area. Since at least 1956 it has had a comprehensive zoning ordinance applicable to the entire village and dividing it into 10 districts for land use. The ordinance was enacted pursuant to sec. 62.23 (7) of the statutes which is applicable to villages by virtue of sec. 61.35.

Pursuant to this grant of police power, a municipality for the purpose of promoting health, safety, morals, or the general welfare of the community may regulate and restrict buildings in height and size, the percentage of lot which they may occupy, the size of yards, open spaces, density of population, and the location and use of buildings and land for trade, industry, residences, or other purposes. Such an ordinance is to be liberally construed in favor of the municipality by the express provisions of the section. This statute further provides a municipality may be divided into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of zoning. Uniform regulations throughout each district may be provided in the comprehensive plan designed "to lessen congestion in the streets; to

secure safety from fire, panic, and other dangers; to promote health and general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. Such regulations shall be made with reasonable consideration, among other things, of the character of the district and its peculiar suitability for particular uses, with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such city." Sec. 62.23 (7) (c), Stats.

The comprehensive zoning ordinance of Elm Grove provided for four classes of residential districts, a multiple-dwelling district, a general local-business district, a limited local-business district, a commercial and light-manufacturing district, a public building and institution district, and a conservancy district. The greater part of Elm Grove has been placed in the most restricted residential district. The general local-business district consists of about three blocks on both sides of Watertown Plank road which runs principally in an easterly and westerly direction in the village. Elm Grove road runs generally north and south and forms the west boundary line of the general local-business district and a T intersection with Watertown Plank road from the south. Some 200 feet west of this intersection Elm Grove road continues to the north. The southwest corner of the intersection of Watertown Plank and Elm Grove roads is zoned as a limited local-business district for a distance of 400 feet on Elm Grove road and 200 feet on Watertown Plank road. This area serves as a buffer district between the general local-business district to the east and north and the most highly restricted residential district to the west. The respondents' property is located at this southwest corner and has been occupied for many years by a blacksmith and metal shop, a nonconforming use under the ordinance. On the

southeast corner of the intersection in the general local-business district, there is a gasoline filling station and to the south thereof a farm-machinery and implement-sales and repair building. On the north side of Watertown Plank road across from the respondents' property is a parking lot for a supermarket and a barbershop located to the east.

The material part of Section 8 of the ordinance (Limited Local-Business District) provides: "(a) Use Regulations. In the Limited Local Business District, no building or land shall be used, and no building shall hereafter be erected or altered except for one or more of the following uses: 1. Any of the following retail and customer service establishments, only after their location and plan of operation have been submitted to and approved by the Planning Commission: (a) Art Shop, (b) Barber Shop, (c) Beauty Parlor, (d) Bank or Savings and Loan Office, (e) Book or Stationery Store, (f) Clinic, (h) Delicatessen, (i) Florist Shop, (k) Interior Decorator, (l) Jewelry Store, (m) Music and Radio Store, (n) News Stand, (o) Parking area to serve Limited Local Business District, (p) Pharmacy, (q) Photographer, (r) Professional Office or Studio, (s) Radio and Television Service and Repair Shop, (t) Real Estate Office, (u) Shoe Store, except repair shops, (v) Tailor or Dressmaking Shop, (w) Utility Company Office, and (x) Any similar use, subject to the approval of the Planning Commission. 2. No retail business shall be permitted to locate which requires more than ten (10) employees for its operation."

Section 9 (General Local-Business District) allows all the uses permitted in section 8 and then provides: "2. The following businesses or trades of a more general nature, serving a larger trade area, but only after their location and plan of operation have been submitted to and approved by the Planning Commission: (a) Appliance Store, (b) Automobile sales rooms for new or used cars, repair shops and

storage garages, and used car lots adjacent to and when in conjunction with automobile sales rooms, (c) Bakery, (d) Clothing or Dry Goods Store, (e) Drug Store, (f) Furniture Store, (g) Fruit and Vegetable Market, (h) Grocery and other products Store, (i) Hardware Store, (j) Ice Cream Store, (k) Meat and Fish Market, (l) Parking Area to serve General Business District, (m) Restaurant, (n) Soda Fountain, (o) Tavern, (p) Telegraph and Telephone office and Telephone Exchange, (q) Theaters, (r) Delicatessen, (s) Notion or Variety Shop, (t) Shoe Repair Shop, (u) Any similar use subject to the approval of the Planning Commission." There is no restriction in Section 9 on the number of employees who may be employed by a business located in the district.

Prior to bringing this suit the respondents unsuccessfully attempted to have their property rezoned from limited to general local business. They were also unsuccessful in securing a building permit for a gasoline station. Gasoline filling stations are not expressly enumerated as a permitted business in either business district but they have been determined to belong in a general local-business district by the planning commission as being a use similar to that classification. No appeal has been taken from the denial of the permit or such determination; the attack here is on the constitutional ground no valid distinction exists between the general local-business and limited local-business classifications.

In their argument the respondents rely primarily on *State ex rel. Ford Hopkins Co. v. Mayor* (1937), 226 Wis. 215, 276 N. W. 311, which involved an ordinance regulating the operation of a single business (restaurants), not a comprehensive zoning ordinance. In the course of that opinion this court laid down the principle that classifications of persons or businesses to be regulated must be reasonable and substantial and formulated five tests which had to be met for

the valid exercise of the police power in such cases. The first test, which is applicable here, is whether the two business classifications in the ordinance are based upon a substantial distinction which makes them really different from one another. No question is raised that the classifications are not germane to the purpose of the ordinance or that the classifications are based upon existing circumstances only.

Classifications in a comprehensive zoning ordinance are viewed somewhat differently than an ordinance dealing solely with the regulation of a single business because of the necessity of considering the classifications in relation to the basic purposes and characteristics of the comprehensive zoning plan and the establishment of a proper relationship between districts in order to secure the benefits of community planning. As early in the history of zoning as *State ex rel. Carter v. Harper* (1923), 182 Wis. 148, 196 N. W. 451, this court considered a comprehensive zoning ordinance as justified in the exercise of the police power not only in the interest of public health, morals, and safety, but particularly for the promotion of public welfare, convenience, and general prosperity. General welfare was equated with the stabilization of the value of property and the promotion of the permanency of desirable home surroundings and of the happiness and comfort of the citizens. The court extolled the virtues and the community benefits of a planned development of a municipality as opposed to unplanned growth, concluding, "The one compares to the other about as a well-ordered department store compares to a junk-shop." This opinion was favorably characterized as expressing "the broader view" of constitutionality in the first decision upholding a comprehensive ordinance by the United States supreme court. *Euclid v. Ambler Co.* (1926), 272 U. S. 365, 47 Sup. Ct. 114, 71 L. Ed. 303.

Because of the impossibility the law does not require in a comprehensive zoning plan that each district be drawn with

scientific or mathematical accuracy, see *Schmidt v. Board of Adjustment of Newark* (1952), 9 N. J. 405, 88 Atl. (2d) 607, provisions are generally made for variances and hardship cases. Each district's boundaries need not be independently and solely justified directly in relationship to the exercise of the police power. A comprehensive zoning plan as distinguished from the regulation of a single business or a single type of business more substantially rests upon the interdependency of adjoining parcels of land in a community and the appreciation that the value and usefulness of each parcel to the owner and to the community are affected by the use made of the adjoining parcel. A comprehensive zoning plan is a means by which the character of the community is to be preserved although devoting the land to its most-appropriate uses.

The early concept that the exclusion of a business from an area needed a basis akin to a nuisance has been abandoned, *State ex rel. Algoma v. Peterson* (1942), 239 Wis. 599, 2 N. W. (2d) 253, nor is the police power in respect to comprehensive zoning to be exercised only in cases of absolute necessity. The concept of public welfare is broad and inclusive and embraces in comprehensive zoning the orderliness of community growth, land value, and aesthetic objectives. *State ex rel. Saveland Park Holding Corp. v. Wieland* (1955), 269 Wis. 262, 69 N. W. (2d) 217; *Berman v. Parker* (1954), 348 U. S. 26, 75 Sup. Ct. 98, 99 L. Ed. 27; *State ex rel. Miller v. Manders* (1957), 2 Wis. (2d) 365, 86 N. W. (2d) 469.

However, unreasonable classifications in zoning ordinances, whether comprehensive or not, and restrictions which are not reasonably germane to legitimate objectives or which prohibit a particular use of land ignoring its natural characteristics for such use or which are arbitrary have been held to be unconstitutional on the facts presented. *Hobart v. Collier* (1958), 3 Wis. (2d) 182, 87 N. W. (2d)

868; *Geisenfeld v. Shorewood* (1939), 232 Wis. 410, 287 N. W. 683; *Rowland v. Racine* (1937), 223 Wis. 488, 271 N. W. 36. A restriction or use may be unreasonable because it must be said the private owner ought not bear so great a burden or such burden is not commensurate with the benefit to the public; *Caledonia v. Racine Limestone Co.* (1954), 266 Wis. 475, 63 N. W. (2d) 697. Although zoning is a matter within legislative discretion, when the exercise of that power exceeds the bounds of discretion or an ordinance is arbitrarily administered, the court will grant relief. *State ex rel. O'Neil v. Hallie* (1963), 19 Wis. (2d) 558, 120 N. W. (2d) 641.

We must start with the premise that a comprehensive zoning ordinance enacted pursuant to sec. 62.23, Stats., is presumed to be valid and such ordinance must be liberally construed in favor of a municipality. Consequently, an alleged invalidity of the ordinance must be clearly shown by the party attacking it. *State ex rel. Humble Oil & Refining Co. v. Wahner* (1964), 25 Wis. (2d) 1, 130 N. W. (2d) 304; *Smith v. Brookfield* (1956), 272 Wis. 1, 74 N. W. (2d) 770; *Geisenfeld v. Shorewood, supra.* It follows as a corollary to the presumption of validity and from the fact that the shaping of zoning districts for land use is primarily a legislative function that when the validity of the ordinance in this respect is fairly debatable it should be upheld and the court should not substitute its judgment for that of the municipality. *State ex rel. Normal Hall, Inc., v. Gurda* (1940), 234 Wis. 290, 291 N. W. 350; *Downing v. Joplin* (Mo. 1958), 312 S. W. (2d) 81; 8 McQuillin, Mun. Corp. (3d ed., 1957 rev.), pp. 200, 201, sec. 25.87.

But, the respondents claim a gasoline filling station is no different than the other uses in the limited business district. By stipulation they point out it has been agreed for the purpose of this case that a filling station is no greater fire hazard than other businesses in the limited local-business

district; that such stations have a low fire insurance rate; that the lighting of the proposed station would not interfere with the use of adjacent property, pedestrians, or traffic; that the accident rate of car and pedestrian traffic arising from the ingress and egress to and from a gasoline station is no greater than the other businesses enumerated and that such station would not generate more traffic or more dust than other uses. While these facts may have a relevant bearing on public safety and health, they do not exclude the objectives of general welfare and other considerations justifying the creation of the limited local-business district or equate a gasoline station with the other uses. The testimony on property values goes no further than to indicate a filling station would not adversely affect property values compared with the present nonconforming use.

It is argued that there is no substantial distinction between general and limited business districts. We do not agree. So far as this issue is concerned the respondents have the burden of showing the village acted arbitrarily and unreasonably in eliminating gasoline filling stations from the limited local-business district. We find nothing in common or harmonious between a gasoline service station and an art shop, gift shop, interior decorator, shoe store, tailor or dressmaking shop, barbershop, beauty parlor, floral shop, or the other enumerated permitted uses. The method of operation is entirely different. The enumerated uses are, at least in a village, small shops for a limited trade area. Their presence next to residential districts is generally not objected to when confined to a small area. In this case instead of such uses being used as a neighborhood district, it is used as a buffer between the central general business district and the AA residential district. No place in this comprehensive zoning plan does general local business exist side by side with the three highest restricted residential

districts. All these areas have buffer districts of local business in the least restricted residences.

Boundaries of districts must be drawn somewhere if there are to be districts. *Lewis v. District of Columbia* (D. C. Cir. 1951), 190 Fed. (2d) 25. Frequently, the most natural boundary between zoning districts are streets. *La Salle National Bank v. Chicago* (1955), 6 Ill. (2d) 22, 126 N. E. (2d) 643. The respondents claim it is unreasonable to have a limited business district on the west side of Elm Grove and general local business on the east side. However, it has been held that the zoning of one side of a street for purposes not permitted on the other side is not invalid *per se*. *Scarborough Apartments, Inc., v. Englewood* (1952), 9 N. J. 182, 87 Atl. (2d) 537. In the instant case the more-limited zoning on the west side of Elm Grove is justified in order to create a buffer zone between the highly restricted residential area west of Elm Grove road and the general business district. See: *Oliva v. Garfield* (1948), 1 N. J. 184, 62 Atl. (2d) 673.

While the testimony is not very definite on the distinctions of the various businesses allowed in the two zones, some general characteristics such as the operating characteristics or general mode of conducting business, the physical characteristics and the type and design of building used to conduct such businesses, and the size of the trade area from which customers are attracted was generally established. The most that can be said of respondents' proof to the contrary is that the zoning classification for limited local business excluding gasoline stations was a matter of debatable legislative judgment. Their proof is not convincing that such classification is arbitrary or unreasonable in respect to the respondents' proposed use of this property and, therefore, we cannot find the zoning ordinance unconstitutional on that ground. *Euclid v. Ambler Co., supra; Mehlos v. Milwaukee* (1914), 156 Wis. 591, 146 N. W. 882.

It is claimed the ordinance denies the equal protection of the laws because under the clause, "Any similar use subject to the approval of the Planning Commission" which appears in both sections 8 and 9, discretion is given to deny a permit after finding a use similar. We do not so read this language. A zoning ordinance, as other legislative enactments, must be construed as constitutional if the language thereof can be reasonably construed to sustain it. *Building Height Cases* (1923), 181 Wis. 519, 195 N. W. 544. We do not find the intent of the ordinance by the use of the word "approval" was to give unbridled legal discretion or any discretion to the planning commission not to allow a similar use. Because of the relationship of this language to the other parts of the ordinance it must be construed to mean that the planning commission is to determine what is a similar use. In practice the applicant, as here, decides his proposed use is a "similar use" and seeks a permit. "Approved by the Planning Commission" means as Webster's New International Dictionary (3d ed., unabridged) states, "to judge and find commendable or acceptable,"—acceptable because of similarity. This clause gives the planning commission only the power to determine the issue of the similarity of the proposed use, not the discretion to keep out a similar use. If, in determining the issue of the similarity of the proposed use to the other uses in a district, the planning commission should act arbitrarily or be in error, the applicant has recourse to the courts for a review of that determination.

Finally, the respondents contend the ordinance is invalid because it delegates to the planning commission legislative power without adequate guides or standards governing its exercise. Both sections 8 and 9 require the "location and plan of operation" of the use of the land to be "submitted to and approved by the Planning Commission" before a permit is issued. We consider this issue to be controlled

by *Smith v. Brookfield, supra.* In that case a comprehensive zoning ordinance almost in identical form with the instant case required the same approval of "location and plan of operation." The plan and location of a gravel pit were involved. The delegation of the power to the planning commission was upheld and the court pointed out that the ordinance was a comprehensive zoning plan which declared the various purposes for which it was enacted and the planning commission could be expected to apply in each case the particular object or objective applicable thereto. The purposes and objectives expressed in the ordinance, and in the statute applicable thereto, are sufficient standards for the exercise of the power.

The instant case is not ruled by *State ex rel. Humble Oil & Refining Co. v. Wahner, supra,* and *Juneau v. Badger Co-operative Oil Co.* (1938), 227 Wis. 620, 279 N. W. 666, in which zoning ordinances were held unconstitutional. In the *Wahner Case* the zoning board of appeals was given no standards other than the general public objectives to determine when it was to grant a permit for a filling station in a commercial district. In the *Juneau Case* an ordinance forbade the construction of a gasoline station within the city without procuring the consent of the common council. The ordinance contained no standards and by its terms could apply to some but not all enterprises in such a way that its application was inconsistent. In the instant case we are dealing with the regulation of permitted uses in the light of the zoning objectives. The "location and plan of operation" is not to determine the classification of the use itself. When more than the general objectives have been provided as standards to a licensing agency, such standards have been generally upheld to guide the exercise of a legislative function. The character of the applicant, the proposed location of the business, and the type of articles or merchandise to be handled by a junk shop were held sufficient standards in *Lerner v. Delavan* (1930), 203 Wis. 32, 233 N. W. 608,

and the single factor of traffic conditions in a designated area constituted a sufficient standard to make an exception to the prohibition of constructing a gasoline filling station within a certain distance of an intersection in *Wadhams Oil Co. v. Delavan* (1932), 208 Wis. 578, 243 N. W. 224.

The "location and plan of operation" contrary to the arguments of the respondents does not permit the planning commission to dictate in minute detail or to control the operation of the business of an applicant. The zoning ordinance does not go that far, nor do its purposes and objectives permit such detailed control. The purpose of submitting the location and plan of operation is to furnish sufficient data to the planning commission for its determination that the proposed building or land use by the applicant does not defeat the purposes and the objectives of the zoning plan by a permitted use.

*By the Court.*—Judgment reversed.

GORDON, J. (*dissenting*). I do not believe that the classifications in sections 8 and 9 of the ordinance of the village of Elm Grove are based upon substantial differences. In *State ex rel. Ford Hopkins Co. v. Mayor* (1937), 226 Wis. 215, 222, 276 N. W. 311, this court asserted the following rule as to classifications in the exercise of police power:

"All classification must be based upon substantial distinctions which make one class really different from another."

The ordinance in question purports to zone land use in an arbitrary manner; it denies equal protection of the laws, and the trial court was correct in striking it down as unconstitutional. *State ex rel. O'Neil v. Hallie* (1963), 19 Wis. (2d) 558, 567, 120 N. W. (2d) 641; *Geisenfeld v. Shorewood* (1939), 232 Wis. 410, 287 N. W. 683.

I am authorized to state that Mr. Justice WILKIE joins in this dissent.