STATE EX REL. SAVELAND PARK HOLDING CORPORATION, Respondent, vs. WIELAND, Building Inspector, Appellant.*

*February 10—March 8, 1955.*

* Motion for rehearing denied, with $25 costs, on May 3, 1955.

For the appellant there were briefs and oral argument by *Fraley N. Weidner* of Milwaukee, village attorney of Fox Point.

For the respondent there was a brief and oral argument by *David V. Jennings, Jr.,* of Milwaukee.

CURRIE, J.    The sole issue on this appeal is the constitutionality of ordinance No. 129 of the village of Fox Point, adopted by the village board of said village on July 23, 1946.

Sec. 1 of such ordinance provides as follows:

"No building permit for any structure for which a building permit is required shall be issued unless it has been found as a fact by the building board by at least a majority vote, after a view of the site of the proposed structure, and an examination of the application papers for a building permit, which shall include exterior elevations of the proposed structure, that the exterior architectural appeal and functional plan of the proposed structure will, when erected, not be so at variance with either the exterior architectural appeal and functional plan of the structures already constructed or in the course of construction in the immediate neighborhood or the character of the applicable district established by ordinance No. 117 [the general zoning ordinance of the village], or any ordinance amendatory thereof or supplementary thereto, as to cause a substantial depreciation in the property values of said neighborhood within said applicable district."

Subsequent sections of the ordinance provide that the building board shall consist of three residents of the village, two of whom shall be architects, and provide a method of appeal from the decision of the building board to the board of appeals of the village.

On this appeal it is conceded that relator's application for a building permit disclosed compliance with all provisions of the general zoning ordinance of the village, and the sole reason why the defendant building inspector refused to grant the permit was the failure of the building board to make the necessary finding prescribed by sec. 1 of ordinance No. 129 as a prerequisite to the issuance of the permit.

The village of Fox Point was incorporated in 1926. It consists of approximately two and one-half square miles, and the entire area has been zoned for residential use only. There is, however, a small business district and a relatively small institutional district permitting churches, lodges, and municipal buildings, but the vast majority of the territory in the village is devoted to residence purposes. The village has developed into a highly desirable residential village, almost entirely built up of single-family residences.

The learned trial court held the ordinance unconstitutional on the following three grounds: (1) That the preservation of property values is not by itself a proper objective for the exercise of the police power in enacting a zoning ordinance; (2) that the ordinance essentially is concerned with aesthetics which also is not a proper basis for exercise of the police power; and (3) that the standards prescribed in the ordinance for governing the action and decision of the building board are so indefinite as to subject applicants for building permits to the unlimited and arbitrary discretion of such board.

At the outset we deem it advisable to consider the basis in constitutional law for upholding the validity of zoning ordinances, which, by their very nature, do impose restrictions upon the use of private property. We quote from the able opinion by Mr. Justice OWEN in *State ex rel. Carter v. Harper* (1923), 182 Wis. 148, 151, 153, 196 N. W. 451, 33 A. L. R. 269, as follows:

"The constitution of this state, sec. 13, art. I, provides that the property of no person shall be taken for public use without just compensation therefor, and the Fourteenth amendment of the federal constitution provides that no person shall be deprived of his property without due process of law. These provisions are intended to secure the enjoyment of most substantial and fundamental rights, and the allegation that one is being deprived of his property without just compensation or without due process of law calls for most serious consideration. *It has long been settled, however, that these constitutional provisions interpose no barrier to the exercise of the police power of the state.* Thus it was said in *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 87 N. W. 561, at page 435, speaking of constitutional limitations upon legislative power:

" 'These limitations, however, according to all the authorities, state and federal, are to be read as not extending so far as to deprive the states of their power to so control the conduct of individuals as to protect the welfare of the community—a power commonly described as the "police power." ' . . .

". . . As the interest of society justifies restraints upon individual conduct, so also does it justify restraints upon the use to which property may be devoted. It was not intended by these constitutional provisions to so far protect the individual in the use of his property as to enable him to use it to the detriment of society. By thus protecting individual rights, society did not part with the power to protect itself or to promote its general well-being. *Where the interest of the individual conflicts with the interest of society, such individual interest is subordinated to the general welfare.* If in the prosecution of governmental functions it becomes necessary to take private property, compensation must be made. *But incidental damage to property resulting from governmental activities, or laws passed in the promotion of the public welfare, is not considered a taking of the property for which compensation must be made."* (Emphasis supplied.)

Keeping in mind the foregoing principles, is the objective of an ordinance in the nature of a zoning regulation, which seeks to protect or preserve property values, embraced within the term "general welfare?" It is the contention of counsel for relator that it is not, because such an ordinance does not tend to promote public health, safety, or morals. We consider this as entirely too restrictive an interpretation of the term "general welfare." As pointed out by the New York court of appeals in *Wulfsohn v. Burden* (1925), 241 N. Y. 288, 298, 150 N. E. 120, 122:

"The [police] power is not limited to regulations designed to promote public health, public morals, or public safety, or to the suppression of what is offensive, disorderly, or unsanitary, but extends to so dealing with conditions which exist as to bring out of them the greatest welfare of the people by promoting public convenience or general prosperity."

In the recent case of *State ex rel. Wisconsin Lutheran H. S. Conference v. Sinar* (1954), 267 Wis. 91, 95, 96, 65 N. W. (2d) 43, this court upheld the constitutionality of a zoning ordinance of the city of Wauwatosa which excluded

private schools other than private elementary schools from class "A" residence districts, and stated:

"We have recognized that the term 'general welfare' includes considerations of public convenience and general prosperity. . . . The presence of the school *will lessen the taxable value of near-by homes* and will deter the building of new homes in the area." (Emphasis supplied.)

However, other considerations in addition to the protection of property values were also stressed in our opinion in *State ex rel. Wisconsin Lutheran H. S. Conference v. Sinar, supra,* to establish that the zoning restriction therein upheld did promote the "general welfare." Cases from other jurisdictions holding that preservation of property values is the legitimate objective of zoning ordinances are: *Wulfsohn v. Burden, supra; State ex rel. Beery v. Houghton* (1925), 164 Minn. 146, 204 N. W. 569, affirmed in 273 U. S. 671, 47 Sup. Ct. 474, 71 L. Ed. 832; *Rice v. Van Vranken* (1928), 132 Misc. 82, 229 N. Y. Supp. 32, affirmed in 225 App. Div. 179, 232 N. Y. Supp. 506; *Lionshead Lake, Inc., v. Wayne* (1952), 10 N. J. 165, 89 Atl. (2d) 693, 698, appeal dismissed, January 19, 1953, for want of substantial federal question, in 344 U. S. 919, 73 Sup. Ct. 386, 97 L. Ed. 708.

The New Jersey court, in an opinion by Mr. Chief Justice VANDERBILT, in the recent case of *Fischer v. Bedminster* (1952), 11 N. J. 194, 205, 93 Atl. (2d) 378, 384, upheld the validity of a zoning ordinance in a rural community restricting lot sizes to a minimum of five acres each, and declared:

". . . there would appear to be ample justification for the ordinance in preserving the character of the community, *maintaining the value of property therein* and devoting the land throughout the township for its most appropriate use." (Emphasis supplied.)

In the earlier New Jersey case of *Griggs v. Paterson* (1944), 132 N. J. L. 145, 147, 39 Atl. (2d) 231, 232, it was stated:

"The proper purpose of zoning is 'conserving the value of property and encouraging the most appropriate use of the land.' *Gabrielson v. Glen Ridge* [176 A. 676, 679], 13 N. J. Mis. R. 142."

Mr. Edward D. Landels contributed an article entitled "Zoning: An Analysis of its Purposes and its Legal Sanctions" in 17 American Bar Association Journal, 163. The author of such article was a prominent member of the Oakland, California, bar, who had served as special counsel for the city of Oakland in zoning cases, and was a member of the American City Planning Institute, Legal Division. Such article contains the following pertinent statement (p. 165):

"On analysis the primary objects of zoning are found to be, not so much the protection of public health and safety, as the protection of the value and usefulness of urban land, and the assurance of such orderliness in municipal growth as will facilitate the execution of the city plan and the economical provision of public services.

"Zoning results chiefly from an appreciation of the 'interdependence of adjoining parcels of land' in urban centers; from a realization that the value and usefulness of each parcel, not only to the owner but to the community, is vitally affected by the use made of the adjoining parcel. It is predicated upon a basic principle of urban land economics, that a certain conformity in use stabilizes and insures the value of land."

While the great weight of authority holds that the police power may be validly exercised in the enactment of zoning ordinances having at least as one of their objectives the preservation of property values, the Michigan court in *Elizabeth Lake Estates v. Waterford* (1947), 317 Mich. 359, 26 N. W. (2d) 788, 792, held that (p. 369), "the conservation of property values is not by itself made a proper sole objective for the exercise of police power," in passing upon a Michigan statute authorizing townships to adopt zoning ordinances (p. 368), "to promote public sanitation, health,

safety, and general welfare" even though such statute also specified that "reasonable consideration" should be given, among things, to "conservation of property values."

We consider it significant that the Michigan court in the *Elizabeth Lake Estates Case* cited no authority other than its own decisions in support of its conclusion. The particular ordinance invalidated provided a minimum of cubic-feet contents and square feet of floor area for new dwellings to be constructed in the zoned area, and the court pointed out that this, in reality, had the effect of prohibiting houses being erected costing below a certain sum. The court, therefore, could have grounded its decision on the narrower ground that the ordinance had no reasonable relationship to the objective of conserving property values, instead of holding such objective improper. In the instant case it is not urged that the ordinance before us had the indirect effect of requiring homes to be erected in the village to have a minimum cost, nor do we believe such objection could be validly raised against such ordinance. The *Elizabeth Lake Estates Case* decision is directly contrary to the well-reasoned opinion of Mr. Chief Justice VANDERBILT of the New Jersey supreme court rendered in *Lionshead Lake, Inc., v. Wayne, supra,* upholding a township zoning ordinance requiring homes to have a minimum square footage of floor space.

We have no difficulty in arriving at the conclusion that the protection of property values is an objective which falls within the exercise of the police power to promote the "general welfare," and that it is immaterial whether the zoning ordinance is grounded solely upon such objective or that such purpose is but one of several legitimate objectives. Anything that tends to destroy property values of the inhabitants of the village necessarily adversely affects the prosperity, and therefore the general welfare, of the entire village. Just because, in the particular case now before us, property values in a limited area only of the village are at stake does not mean that such threatened depreciation of property values does not

affect the general welfare of the village as a whole. If relator is permitted to erect a dwelling house on its land of such nature as to substantially depreciate the value of surrounding property, there is danger that this same thing may be repeated elsewhere within the village, thus threatening property values throughout the village.

The learned trial court held that the objective of the ordinance is grounded largely upon aesthetic considerations, which are insufficient to justify the exercise of the police power. While the ordinance does use the term *"architectural appeal,"* a building permit is only authorized to be withheld in those cases where the architectural appeal of the proposed structure is so at variance with that of structures already constructed, or being constructed, "as to cause a substantial depreciation in the property values" in the immediate neighborhood. This court pointed out in *Jefferson County v. Timmel* (1952), 261 Wis. 39, 61, 51 N. W. (2d) 518, that while the general rule is that the zoning power may not be exercised for purely aesthetic considerations, such rule was undergoing development. In view of the latest word spoken on the subject by the United States supreme Court in *Berman v. Parker* (1954), 348 U. S. 26, 75 Sup. Ct. 98, 99 L. Ed. 27, this development of the law has proceeded to the point that renders it extremely doubtful that such prior rule is any longer the law.

In *Berman v. Parker* the United States supreme court had before it the question of the constitutionality of an act of congress providing for slum clearance in the District of Columbia under which appellants' property was included within the boundaries of the district to be condemned for slum-clearance purposes, although it was used for store purposes and in no sense constituted slum housing. Appellants urged that the act, in so far as it permitted its property to be taken for such purpose, could not be justified under the police power, but was in violation of the "due process" clause

of the Fifth amendment. The court in a unanimous opinion by Mr. Justice DOUGLAS declared (348 U. S. 33) :

"The concept of the public welfare is broad and inclusive. See *Day-Brite Lighting, Inc. v. Missouri,* 342 U. S. 421, 424, [72 Sup. Ct. 405, 407, 96 L. Ed. 469]. The values it represents are spiritual as well as physical, *aesthetic as well as monetary.* It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well clean, well balanced as well as carefully patrolled. In the present case, the congress and its authorized agencies have made determinations that take into account a wide variety of values. It is not for us to reappraise them. *If those who govern the District of Columbia decide that the Nation's capital should be beautiful as well as sanitary, there is nothing in the Fifth amendment that stands in the way."* (Emphasis supplied.)

While the court in *Berman v. Parker, supra,* was dealing with the "due process" clause of the Fifth amendment, which restricts the power of congress, and it is the "due process" clause of the Fourteenth amendment which is applicable to state action, we consider such distinction to be immaterial in considering the scope of the police power and its exercise to promote the general welfare.

We now come to the last issue presented, viz., whether the standards set by ordinance No. 129 for governing the functioning of the building board of the village are so indefinite as to subject applicants for building permits to the arbitrary discretion of such board. It will be recalled that the ordinance specifically provides for an appeal from the decision of the building board to the village board of appeals, and, of course, timely court review by certiorari will always lie from the decision of the board of appeals.

In order for a building permit to be refused under the ordinance the building board must find, as a fact, that the exterior architectural appeal and the proposed plan of structure when erected shall not be so at variance with those of structures

already constructed, or in the course of construction, "in the immediate neighborhood" . . . "as to cause a *substantial* depreciation in the property values of said *neighborhood.*" The two words of the ordinance which have been singled out as being most objectionable from the standpoint of indefiniteness are *"neighborhood"* and *"substantial."*

While several cases are cited in which courts have been called upon to define the term *"neighborhood"* we consider the decision of the Iowa court in *Youtzy v. Cedar Rapids* (1911), 150 Iowa, 53, 129 N. W. 351, as being the most helpful. That case involved the taking of land by condemnation, and complaint was made by the appellant landowner that witnesses had been permitted to testify as to sale prices of lands which were so far removed as to not be located in the neighborhood of the property being condemned. The Iowa court, in its opinion, conceded that property to be used by way of comparison or illustration "should be in the same neighborhood or so nearly similar to the one in question that knowledge of the former, and of its value, will afford some degree of aid to the intelligent and fair-minded juror in estimating the value of the latter." It then proceeded to define *"neighborhood,"* and stated (150 Iowa, 55, 129 N. W. 351):

"The term 'neighborhood' is one of quite indefinite meaning, and it may well be that in some cases the trial court will permit the inquiry to take a wider territorial range than it could allow in others. Certainly this court cannot attempt to fix a standard of measurement, and say as a matter of law that the similar property concerning which inquiry may be made is such only as may be found within a given number of feet, yards, or blocks of the property condemned. Counsel for appellant argues, in effect, that, as the word has been used in cases of this class, 'neighborhood' has reference only to adjoining property, but we think this cannot be. The reasonable proposition is that the trial court is vested with discretion to draw the line in each case as shall seem just

under all the circumstances developed by the testimony, and that, unless abuse of such discretion is shown, its ruling will not be held reversible error."

While the court in *Youtzy v. Cedar Rapids, supra,* was defining the term "neighborhood" as used in a rule of the common law, instead of a statute or ordinance, we consider the foregoing quotation equally applicable to its use in the instant case in ordinance No. 129. Clearly "neighborhood," as used in the ordinance, does extend further than adjoining property and may vary according to existing conditions. For example, in a section of the village where the average building lot comprises several acres, the limits of the neighborhood might well be held to extend farther than in the case of an area in the village where building lots average less than an acre each in area.

Although it is impossible for this court in this decision to establish, in terms of measurement of feet, the radius of the largest permissible area which would qualify as a neighborhood under the ordinance, there is undoubtedly in each case a point beyond which a court could hold, as a matter of law, that certain property was not in the same neighborhood as applicant's property, and that it would be an abuse of discretion if the building board determined otherwise. In case of a court review some effect necessarily would have to be accorded the adjective *"immediate"* preceding the word "neighborhood" where the latter first appears in the ordinance.

Just because some discretion is necessarily accorded the board to determine the limits of a neighborhood, as applied to a particular applicant's property, does not render the ordinance void. *Milwaukee v. Ruplinger* (1914), 155 Wis. 391, 395, 145 N. W. 42; and *Pinkerton v. Buech* (1921), 173 Wis. 433, 181 N. W. 125. In the first mentioned of said two cases, this court upheld an ordinance of the plaintiff city which prohibited anyone from carrying on a junk shop in

the city without a license, and further provided "all applications for license under this ordinance shall be made to the mayor, who may grant or refuse to grant such license as to him may seem best for the good order of the city." The court held the ordinance granting to the mayor the power to grant or refuse licenses *"as to him may seem best for the good order of the city"* set a sufficiently definite standard, and held the ordinance constitutional. In the *Pinkerton Case* the constitutionality of a statute providing for the licensing of private detectives was upheld which required the approval of the application by the fire and police commission of the city and a finding by the secretary of state that the applicant was *"of good character, competency, and integrity."*

Turning now to the word *"substantial"* which has also been attacked by relator as being too indefinite, we find that the Washington supreme court in *In re Krause's Estate* (1933), 173 Wash. 1, 21 Pac. (2d) 268, 270, held that the term *"substantially"* was not so indefinite as to render a contract employing it to be unenforceable. The particular contract provided "neither party shall have the right to make a new will as to property which has pursuant hereto been *substantially* benefited by the other party," with respect to which the court stated (p. 8) :

" 'Substantial' as an adjective means something worth while as distinguished from something without value, or merely nominal."

This court is frequently required to apply the wording of sec. 227.20 (1) (d), Stats., "unsupported by substantial evidence in view of the entire record," in cases involving review of determinations by administrative agencies under our Uniform Administrative Procedure Act. We do not recall of any litigant ever having raised the question that the word "substantial" therein rendered such quoted portion of the statute indefinite and void.

Determining whether or not a proposed structure will *"substantially"* depreciate property values in the area is simply the reverse of the common question that must be answered in the assessing of benefits resulting from a public improvement in levying a special assessment against the benefited property. There the question must be determined whether or not the public improvement benefits property, and if so what property and to what extent.

It is our considered judgment that ordinance No. 129 constitutes a valid exercise of the police power of the village of Fox Point, and its provisions are not so indefinite or ambiguous as to subject applicants for building permits to the uncontrolled arbitrary discretion or caprice of the building board.

*By the Court.*—Judgment reversed, and cause remanded with directions to quash the proceedings.