# Harrison v. Upper Merion Township Zoning Board of Adjustment

*Daniel L. Quinlan, Jr.,* for appellant.

*James E. Meneses,* for respondent.

DITTER, J., May 28, 1968.—This case presents a narrow issue: Can a zoning board of adjustment refuse a variance on the grounds that it would reduce property values in the neighborhood? We conclude that it may.

Eugene J. Harrison is the owner of a residential tract of land in Upper Merion Township. He seeks a variance so he can construct a funeral home, a use not permitted in his particular zoning district. The zoning board of adjustment found that the property suffered a unique hardship, but concluded that the variance should not be granted because it would reduce property values and thus would be adverse to the public interest.

Applicant's property is approximately three acres in size and is shaped like a letter "T". Its base has a frontage of 175 feet on Gulf Road, and its crossbar runs for about 800 feet along the Schuylkill Expressway, a limited-access highway. Part of the crossbar is bisected by the relocation of a public road, and a storm-sewer easement which travels down the base of the "T" to Gulf Road. The land is in an area zoned R-1, Residential, a district primarily created for single family residences and educational, religious, and philanthropic uses. Other properties on the same side of Gulf Road are used for residential purposes, but across Gulf Road, which divides the R-1 Residential area and an area zoned for multiple family dwellings, is a large apartment complex.

The board calculated that there were between two and two and one-half acres of usable ground, part of which is crossed by the storm-sewer easement. The board concluded that the topography of the ground plus the storm-sewer easement created a unique hard-

ship. It refused the variance, however, because it determined a funeral home would cause an increase in the traffic and a reduction in the property values nearby.

Applicant appealed to this court and after argument, the matter was remanded to the board of adjustment for further testimony concerning the additional traffic and market-value questions.

The board held a second hearing and concluded that its earlier decision relating to increased traffic was in error. Nevertheless, it refused the variance because it found that a commercial funeral establishment would lower property values in this residential area. In reaching its decision, the board considered testimony from two real estate experts presented by the applicant and one called by the township. The board gave greater credibility to the expert presented by the township and on the basis of his testimony, refused the variance.

Two arguments are advanced by the applicant in urging us to reverse the board:

(1) The lowering of real estate values in a residential zone is not a sufficient reason to justify the denial of a variance, and

(2) The board should have accepted the testimony of applicant's experts and rejected that of the expert presented by the township.

We shall consider each of these questions in turn:

I. *Property Values and Public Interest*

Section 2001 (C) of the Upper Merion Zoning Ordinance gives the board of adjustment power,

"To authorize, upon appeal, in specific cases such variances from the terms of this Ordinance *as will not be contrary to public interest,* where owing to special conditions a literal enforcement of the provisions of this Ordinance will result in unnecessary hardship, and so that the spirit of this Ordinance shall

be observed and substantial justice done". (Italics supplied)

Although comparatively few cases define "public interest", it is logical to assume that the term refers to those matters which a zoning ordinance is designed to promote. In Devereux Foundation, Inc., Zoning Case, 351 Pa. 478, 485 (1945), it is pointed out that the phrase, "as will not be contrary to the public interest," is intended to insure protection of the interests of that portion of the public which is affected by a variance, namely, the owners and occupants of the neighboring properties. The real question, therefore, is whether the zoning board of adjustment was correct in determining that a reduction of surrounding property values would be contrary to the public interest.

It is quite apparent that the conservation of property values and the maintenance of zoning-district integrity were objectives sought by Upper Merion in enacting its zoning provisions.

Section 101 of the zoning ordinance sets forth the purpose for its enactment in these terms:

"This Ordinance is enacted for the purpose of promoting the health, safety, morals, and the general welfare of the Township, . . . and *is designed . . . to conserve the value of buildings,* and to encourage the most appropriate use of land throughout the Township". (Italics supplied.)

To aid in the interpretation of the ordinance, section 102 lists its objectives:

(A) Guiding and encouraging the future development of the various residential, commercial, industrial and recreational areas of the Township;

(B) *"Protecting the character and the social and economic stability of each of such areas* and encouraging their orderly and beneficial growth;

(C) *"Protecting and conserving the value of land*

*and buildings* throughout the Township appropriate to the various zoning districts established herein;

(D) "Bringing about through proper timing the gradual conformity of land use to the comprehensive plan aforesaid, and minimizing conflicts among the uses of land and buildings; . . ." (Italics supplied.)

In seeking to preserve property values and maintain area homogeneity, Upper Merion acted within the scope of the enabling act, The Second Class Township Code of May 1, 1933, P. L. 103, art. XX, sec. 2003, as amended, 53 PS §67003:

"Such [zoning] regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality".

Judicial decisions in Pennsylvania have noted that the preservation of property values is an incident of zoning laws: Phillips v. Griffiths, 366 Pa. 468 (1951). "The purpose of zoning regulations is to protect the health and safety as well as the moral and economic well-being of the community": Landis v. Zoning Board of Adjustment, 414 Pa. 146, 149 (1964). See also Von Gerbig v. Marshall, 36 D. & C. 2d 133, 140-141 (1964); Shoemaker v. York Junior College, 30 D. & C. 2d 750, 752 (1963); and Steppler v. Board of Adjustment of Radnor Township, 5 D. & C. 2d 8, 18 (1955).

In addition, it has been held proper to restrict undertaking establishments to certain sections of a municipality[1] by zoning regulations: Rick v. Cramp,

---

[1] In effect, this is what Upper Merion has done: Section 1075(E) of its zoning ordinance permits undertaking establishments in C-3 Commercial Districts. Section 1200(A), governing L-I Limited Industrial Districts, allows all uses permitted in C-3 Commercial Districts, and Section 1300(C) governing H-I Heavy Industrial Districts allows all C-3 Commercial District uses if authorized by special exception.

357 Pa. 83, 91 (1947). Many jurisdictions hold that an undertaking establishment is a nuisance in a residential area. The cases are collected in an annotation in 39 A. L. R. 2d 1000.

Applicant, on the other hand, points to Medinger Appeal, 377 Pa. 217, 226 (1954), where it is said:

"We therefore hold that neither aesthetic reasons nor the *conservation of property values* or the stabilization of economic values in a township are, singly or combined, sufficient to promote the health or the morals or the safety or the general welfare of the township or its inhabitants or property owners, within the meaning of the enabling Act of 1931, as amended, or under the Constitution of Pennsylvania". (Italics supplied.)

Despite the fact that this quotation has been cited with approval in more recent cases,[2] we conclude that aesthetics may and the preservation of property values does come within the proper objectives of zoning. In Bilbar Construction Co. v. Easttown Township Board of Adjustment, 393 Pa. 62 (1958), and Best v. Zoning Board of Adjustment, 393 Pa. 106 (1958), the Supreme Court held that matters of "general welfare" were not limited to those dealing with health, safety, and morals.[3] Thus, in Bilbar, page 72, the court ob-

---

[2] Archbishop O'Hara's Appeal, 389 Pa. 35, 55 (1957); Good Fellowship Ambulance Club's Appeal, 406 Pa. 465, 475 (1962); and Exton Quarries, Inc., v. Zoning Board of Adjustment, 425 Pa. 43, 67 (1967).

[3] Mr. Justice, now Chief Justice, Bell dissented in both cases, contending that the "general welfare" concept was predicated upon a theory of unlimited police power and was therefore repugnant to American traditions and the United States Constitution. In his concurring opinion in Exton Quarries, supra at 67, he observed that the "general welfare" doctrine had introduced great confusion and uncertainty into the law of zoning because the term is incapable of accurate definition. See also, concurring opinion, Key Realty Co. Zoning Case, 408 Pa. 98, 111 (1962).

served:

"Although some of our recent cases appear to have ignored 'general welfare' as a consideration in adjudging whether the police power has been constitutionally exercised in a given instance, it is not open to serious question that it is one of the important elements to be reckoned with in any such inquiry. Its importance lies partly in the fact that it admits of aesthetic considerations when passing upon the validity of a zoning ordinance".

The court broadened the concept of the general welfare to include the preservation of property values by stating in Best, page 117:

"Not only is the preservation of the attractive characteristics of a community a proper element of the general welfare, *but also the preservation of property values* is a legitimate consideration since '[A]nything that tends to destroy property values of the . . . [community] necessarily adversely affects the prosperity, and therefore the general welfare, of the entire . . . [community].' *State ex rel. Saveland Park Holding Corp. v. Wieland*, 269 Wis. 262, 69 N. W. 2d 217, 222 (1955). (Italics supplied.)

" 'We are satisfied that at long last conscientious municipal officials have been sufficiently empowered to adopt reasonable zoning measures designed towards preserving the wholesome and attractive characteristics of their communities and the values of taxpayers' properties.' (citing cases) "

An additional consideration in this case is the fact that a grant of a variance to applicant will bring a commercial use into a residential area. A variance is a departure from the letter, but not the spirit, of the zoning statute. The grant of a variance should not be used as a guise to accomplish a rezoning: Richman v. Zoning Board of Adjustment, 391 Pa. 254, 259 (1958). Area homogeneity is one of the basic purposes which

zoning seeks to accomplish: Russian Orthodox Church Appeal, 397 Pa. 126, 128 (1959).

For these reasons we conclude that the board was correct in considering the question of property values in passing upon the variance.

## II. *Weight to be Given Testimony*

Applicant also complains that the board should have given greater weight to the testimony of his experts than to the township's expert, J. Donald Alton. Mr. Alton is a real estate broker and appraiser. He resides in Upper Merion and stated that in his opinion it would be detrimental to the surrounding residences to permit the establishment of a commercial use in their midst, and that any use other than residential would adversely affect market values.

In cross examination, however, Mr. Alton admitted that although he was familiar with the general area in question, he had never inspected applicant's land. He also said he was basing his opinion about the depreciation of property values on his general experience and on a specific experience when one of his clients, who operated a funeral home, tried to buy a residential property.

Applicant contends that the board erred in being guided by Mr. Alton's opinion. In advancing this argument, applicant maintains that his experts were superior in knowledge and experience and that their opinions should have been accepted by the board. Granting for the sake of argument that the witnesses produced by the applicant were qualified and persuasive, the fact remains that the board gave greater weight to the testimony of Mr. Alton. His testimony was sufficient in law to support the conclusion rendered by the board and under the circumstances, we cannot substitute our judgment for its. In an appeal from the action of a zoning board of adjustment in

which the court receives no additional evidence, our power is limited to a review of the record to determine whether the board was guilty of a manifest abuse of discretion or an error of law, and proper corrective action if abuse or error is discovered: Jacobi v. Zoning Board of Adjustment, 413 Pa. 286, 289 (1964). Since we find neither manifest abuse of discretion nor an error of law, the board's decision must be affirmed.

And now, this May 28, 1968, the decision of the zoning board of adjustment is affirmed and applicant's appeal is dismissed.