COURT OF APPEALS
DECISION
DATED AND FILED

December 8, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP922**

STATE OF WISCONSIN

Cir. Ct. No. 2018CV233

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN EX REL. LAMAR CENTRAL OUTDOOR, LLC
D/B/A LAMAR ADVERTISING OF GREEN BAY,

PETITIONER-APPELLANT,

V.

TOWN OF GREENVILLE,

RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Outagamie County: MITCHELL J. METROPULOS, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1　　PER CURIAM. Lamar Central Outdoor, LLC d/b/a Lamar Advertising of Green Bay (Lamar) appeals from a circuit court order affirming a decision of the Town of Greenville Zoning Board of Appeals (Board). The Board's decision sustained certain conditions imposed on a special exception permit for an off-premise billboard issued to Lamar. We affirm.

## BACKGROUND

¶2　　The site at issue is subject to the zoning restrictions of two zoning districts. First, the property is zoned General Commercial, which authorizes conditional use permits for billboards as a special exception to the zoning ordinance. The Town's zoning regulations state that a special exception is a:

> use or structure that may not be appropriate generally or without restriction throughout a district but which, if controlled as to number, area, location or relation to neighborhood, would promote the public health, safety, welfare, comfort, convenience or the general welfare.

¶3　　The zoning ordinance further provides ten standards for granting special exceptions. These ten standards are contained in Article XXVII, § 320-209, subsection A., and include, but are not limited to, the following:

> A. Standards for granting special exceptions. Special exceptions may be recommended by the Planning Commission, and approved by the Town Board, when all of the following conditions prevail:
>
> 　.…
>
> (3) The proposed use will not create a look of clutter, garishness, glare or create an obnoxious noise level, or would generate any other incompatibility with surrounding neighborhood.
>
> (4) The impact of the use is furthering the purpose of this chapter or the purposes of the zoning district in which the use is proposed or the adopted Comprehensive Plan of the Town.

Subsection B(1) further provides:

> Prior to the granting of any special exception, the Planning Commission may recommend and the Town Board may place such conditions and restrictions upon the establishment, location, construction, maintenance and method or hours of operation of the special exception as is [sic] deemed necessary for the protection of the public interest and to secure compliance with the standards specified in Subsection A of this section.

¶4      The second zoning district applicable to the site is referred to as the "Gateway Overlay District," which has more stringent sign regulations than the General Commercial District.  The Gateway Overlay District generally allows "[o]nly those special exception[s] and structures in the underlying zoning district that are clearly compatible with the purpose and intent of the Gateway District." The purpose and intent of the Gateway Overlay District is "to establish a series of gateway corridors with special architectural and landscaping requirements to enhance the visual and aesthetic character along the following [highway] corridors."

¶5      Lamar's application was conditionally approved by the Planning Commission and the Town with six conditions:

1. The off-premise[s] monument sign must meet all restrictions established for signage within the Gateway Overlay District, including but not limited to size, materials and sign type,

2. The constructed sign may never be used for digital or electronic messaging,

3. The constructed sign will represent the maximum square footage allowed for a monument sign on the parcel and thus no other sign except wall signs will be permitted on the premises,

4. No temporary signage will be allowed/permitted on the premises,

3

5. The Special Exception Use Permitted sign may be shared for on[-]premise[s] business advertising provided it does not exceed the total maximum size permitted, [and]

6. The constructed sign must meet any and all municipal, county and state setback requirements[.]

¶6 Lamar sent correspondence to the Town dated December 5, 2017, objecting to the permit's conditions, indicating "[o]f paramount concern is the Town's imposition of Conditions 3–5." Among other things, Lamar claimed the conditions effectively precluded the owner of the premises from erecting an on-premises monument-type "accessory sign"[1]—i.e., a sign advertising on-premises business. The Town responded to Lamar's objections by letter dated December 8, 2017, citing the justifications for imposing each condition together with applicable ordinance provisions. For example, the December 8 letter stated as follows concerning condition 3:

3. The constructed sign will represent the maximum square footage allowed for a monument sign on the parcel and thus no other sign except wall signs will be permitted on the premises,

*(Complies with §320-209A(4) the impact of the use is furthering the purposes of this chapter or the purposes of the zoning district in which the use is proposed or the adopted Comprehensive Plan of the Town. Complies with §320-209A(3) the proposed use will not create a look of clutter, garishness, glare or create an obnoxious noise level or would generate any other incompatibility with surrounding neighborhood. As noted, under the first condition, the property is zoned General Commercial within the Gateway Overlay District. In accordance with*

---

[1] Permitted accessory signs—i.e., signs advertising on-site businesses in the General Commercial District—include wall signs not to exceed 400 square feet for any one premise; projecting signs not to exceed 10 square feet for any one premise; ground (monument) signs not to exceed 25 feet in height and 200 square feet on all sides; and roof signs not to exceed 25 feet above the roof and 300 square feet on all sides.

*§320-56B, permitted signs within business and industrial districts are subject to specific restrictions. Furthermore, Article XXIII Gateway Overlay District establishes additional restrictions for permitted accessory signs related to size, location and design.)*

¶7     Lamar then filed an appeal with the Board.  A de novo hearing was conducted, at which time Lamar stated that it was appealing from conditions 3 through 5.  It also stated, however, "Lamar would be very satisfied if only Number 3 were eliminated."  Lamar further stated:

> And the primary objection is the imposition of the condition that there be no other sign on the property because obviously there's a landowner who has a business located on the property, and he wants to have the ability to put up a sign there to advertise his business, particularly if he changes the nature of his business, and this condition would preclude him from doing so.

¶8     The landowner was not present at the Board hearing, nor did he participate in any of the proceedings.  The Town's zoning administrator was called by Lamar to testify at the hearing.  Among other things, Lamar questioned the zoning administrator regarding the December 8, 2017 letter, which was marked for identification at the hearing as Exhibit 6.[2]  The zoning administrator testified he prepared the December 8 letter and that his signature appeared on the last page of the document.  During the Board's discussion following his testimony, the zoning administrator further discussed Exhibit 6, referring the Board members to the letter, and reading to the Board from its contents.  The zoning administrator also noted that the permit's conditions allowed the sign to be shared for on-premises

---

[2] Although unclear from the transcript of the de novo hearing, Lamar represented in its petition for judicial review, as well as in its brief in the circuit court, that Exhibit 6 was received into evidence at the hearing.

business advertising, provided that it did not increase in size and met the size requirements that were placed on it under the permit's conditions. He further noted that the landowner "can place wall signs … this is not shutting them out."

¶9 During discussions, a Board member stated, "I think it boils down to the Town Board didn't want two monument-type signs on the premises." The zoning administrator then discussed special exception uses under the ordinance, and he referred the Board again to Exhibit 6:

> So again if you refer to Exhibit Number 6, the third paragraph on the first page identifies that special exceptions are subject to conditions. The Planning Commission may recommend and the Town Board may require evidence and guarantees as it may deem necessary.
>
> You're hearing this on its own merits, not on the merits of the Planning Commission or the Town Board and so we are presenting to you on behalf of the [T]own the conditions that were provided and the basis and the findings of fact that are related to this particular case. And if you go to Page 2, that goes through those following conditions that were applied and the findings of fact that were related in the Planning Commission meeting, albeit not recorded in the minutes.
>
>  ….
>
> I can certainly go through the individual conditions and the requirements and the findings of fact that we presented as recommendations based on this exhibit, but I'm sure that you obviously have that in front of you. Those are the conditions, those are the requirements and the findings of fact that we presented administratively.

¶10 The following colloquy also occurred between a Board member and the zoning administrator:

> MR. REIMER: And the [T]own put that Condition 3 in there because it was trying to minimize a bunch of different signs on a single property?
>
> [Zoning Administrator]: Correct, our interpretation –

MR. REIMER: That cluttered look?

[Zoning administrator]: Cluttered, yep, exactly. Trying to limit the amount of signage that would be located off the right-of-way along State Highway 15 within the Gateway follows the intent of the Gateway ordinance.

MR. ZILISCH: Okay.

¶11 It was then suggested that a roll call vote be conducted, and "everyone state their reason for your vote." A Board member asked:

MR. CARLSON: So really what the condition is is to prevent two monument signs from going on one property.

[Zoning Administrator]: Because that normally would not be customarily acceptable as accessory.

MR. CARLSON: If you own the business and you wanted to put two monument signs up, you probably couldn't, but what they're doing is they're mixing and matching.

MR. ZILISCH: Right.

The following deliberation then occurred:

MR. ZILISCH: Well, it's my position, and I don't know if I can say … I mean, I think that the [T]own permitted a sign with conditions, and in my feeling on it is that I would agree with the [T]own with those conditions and having one sign on the property[, ] I think that's the proper thing to do.

MR. REIMER: My reason for seconding the motion was in general because I don't think it should be approved, and part of it is because I know it's de novo but it's also based upon what's put forth, that the boards or the committee that made the determination looked at a variety of issues and came up with those conditions, and I would be in a place to support those conditions as written.

MR. ZILISCH: Correct.

MR. REIMER: And that's—I wasn't coming to second his motion based upon the one sign or the two signs. Mine was to support the conditions that the [B]oard put out initially, and I think there are reasons for that. I don't think those

conditions were just pulled out of the air. I think there were some reasons.

It may be an 8-acre parcel, but the majority of the visibility of those signs is going to be right down the road. It's going to be, you know, right along the road. So what's in back of that sign in terms of acreage isn't, at least to me, nearly as critical as what's going to be viewed driving down Highway 15.

And I think—what I think was attempted was to try to minimize—I used the word before and it's not intended to offend somebody—the general clutter of signs along a corridor when you're coming or leaving a community. So that's my explanation for seconding the motion.

Now, I'm okay to leave my motion there or leave my second to your motion, but that's my rationale. So you can have a motion for one reason, for his reason, and my second is different than his?

MR. CARLSON: You can all say the same reason or different reasons and then take a vote.

MR. BEARD: I agree with what you're saying. I do. I do agree with what you're saying.

MR. CARLSON: All right.

MR. ZILISCH: And again, my stance is that—like you said, Tom, the town—the Town Board and the Planning Commission approved this sign with these conditions, and it's basically protecting the aesthetics of the corridor and the town, so that's where I stand.

The Board then conducted a roll call vote. Lamar's appeal was unanimously denied.

¶12 Lamar sought review by the circuit court, where Lamar claimed: (1) the Board failed to proceed on a correct theory of law; (2) the Board's decision unreasonably represented its will and not its judgment—i.e., "The record is devoid of any sound reasoning behind the decision of the Board"; and (3) the evidence was such that the Board could not reasonably make the order

8

or determination in question—i.e., "All evidence established that the laws applied by the Planning Commission and the Town Board are not applicable to off-premises billboards."

¶13 The circuit court affirmed the Board. The court initially found there was a jurisdictional basis for the Board's decision. The court also concluded that: (1) the conditions were consistent with the provisions of the ordinance; (2) there was substantial evidence for the decision, which could be primarily found in the procedural history of the application as well as inferences from the conditions themselves; and (3) the Board's decision was reasonable.[3] Lamar now appeals.

## DISCUSSION

¶14 When reviewing a circuit court order on certiorari, we review the record of the board, not the decision of the circuit court, although we may benefit from the court's analysis. *See Hillis v. Village of Fox Point Bd. of Appeals*, 2005 WI App 106, ¶6, 281 Wis. 2d 147, 699 N.W.2d 636. Our review of a zoning board's decision is deferential, and we must accord a presumption of correctness and validity to the decision of the board. *See Sills v. Walworth Cnty. Land Mgmt. Comm.*, 2002 WI App 111, ¶6, 254 Wis. 2d 538, 648 N.W.2d 878. We should not disturb a board's findings if they are supported by any reasonable view of the evidence. *Lamar Cent. Outdoor, Inc. v. Board of Zoning Appeals of the City of Milwaukee*, 2005 WI 117, ¶25, 284 Wis. 2d 1, 700 N.W.2d 87.

---

[3] The circuit court's decision noted that Lamar "is indicating that they dispute conditions one through five. Don't dispute … condition number six." Similarly, we do not discern that Lamar is contesting condition number six in this court.

¶15    Because the circuit court took no new evidence when it conducted a certiorari review of the Board's decision, our review of the Board's action is limited to the following issues: (1) whether the Board kept within its jurisdiction; (2) whether it proceeded under the correct theory of law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the Board might reasonably make the order or determination in question, based on the evidence. *State v. Waukesha Cnty. Bd. of Adjustment*, 2004 WI 56, ¶12, 271 Wis. 2d 547, 679 N.W.2d 514.

¶16    At the outset, we note that Lamar first appears to challenge the circuit court's jurisdiction. Lamar, however, did not challenge jurisdiction in its brief to the circuit court, and we do not discern Lamar's appeal to this court to strenuously challenge the Board's jurisdiction. Such a challenge would lack merit in any event. Here, Lamar is not challenging the validity of the zoning ordinance, and it "recognizes that § 320-209 authorizes the imposition of conditions and restrictions on special exception permits." Indeed, during the Board's discussions at the hearing, Lamar stated: "And we're not saying that the [T]own can't put conditions on. … We know that the [T]own can impose reasonable conditions. … [A]s long as you have a reason for your actions you can do pretty much whatever you want."

¶17    Furthermore, Lamar concedes that the Town could impose architectural and landscaping requirements to enhance the visual and aesthetic character along the corridor where the proposed billboard was to be located. As an initial matter, therefore, the Board was authorized to grant Lamar's special exception permit for an off-premises billboard with conditions, and a proper jurisdictional basis existed for its decision.

¶18    Lamar contends, however, that in making its decision, the Board failed to act according to law.  A board proceeds on a correct theory of law when it relies on the applicable ordinances and cases and it applies them properly.  *Smart v. Dane Cnty. Bd. of Adjustments*, 177 Wis. 2d 445, 452-54, 501 N.W.2d 782 (1993).  Unlike the situation in *Lamar Central Outdoor*, there has been no relevant change in the controlling case law since the Board hearing.  *See Lamar Cent. Outdoor*, 284 Wis. 2d 1, ¶20.  Nevertheless, Lamar argues that the "plain language of the [zoning ordinance] does not support the imposition of any of the challenged conditions."  More specifically, Lamar contends the zoning ordinance "imposes no limitations on billboards in General Commercial Districts other than providing that they are permitted special exceptions under § 320-129."

¶19    Lamar acknowledges, however, that "[t]he [ordinance] prohibits more than one accessory sign on a single parcel."  Lamar nevertheless argues the ordinance "provides no such limitations on billboards."  Lamar further asserts the zoning ordinance does not prohibit the erection of an accessory sign on the same parcel upon which a billboard is located.

¶20    Lamar proceeds from an improper premise.  First, a billboard is not presently "located" on the parcel.  The permit application was *conditionally* approved, subject to six conditions.  Lamar's primary objection at the Board's hearing was the imposition of condition 3—that there be no other sign other than wall signs on the property.  Therefore, the Board is not prohibiting an accessory sign on a parcel upon which a billboard is located.  Lamar attempts to stand on its head the conditional right to off-premises advertising conferred by the grant of a discretionary special exception and turn it into an absolute right to two "monument" signs—one for off-premises advertising and one for on-premises advertising.  This situation is the very one that condition 3 was meant to preclude.

¶21 Lamar argues the zoning ordinance provides an unqualified right to an on-premises accessory sign. But an off-premises sign such as a billboard is an exceptional use. As Lamar acknowledges, the ability to erect a billboard is subject to reasonable limitations and restrictions. In fact, § 320-209 B(1) of the zoning ordinance specifically authorizes the imposition of conditions and restrictions in the granting of *any* special exception "as is [sic] deemed necessary for the protection of the public interest and to secure compliance with the standards specified in Subsection A of this section." Subsection A, in turn, sets forth standards prohibiting special exemptions that, among other things, clutter the landscape, are incompatible with the surrounding neighborhood, or are inconsistent with the purposes of the zoning district. *See* Zoning Ordinance § 320-209A(3), (4).

¶22 Ordinance § 320-206 also provides that "[a] special exception is a use or structure that may not be appropriate generally or without restriction throughout a district but which, if controlled as to number, area, location or relation to neighborhood, would promote the public health, safety, welfare, comfort, convenience or the general welfare." The concept of public welfare is broad, and it is inclusive and embraces the orderliness of community growth, land value, and aesthetic objectives. *See **Step Now Citizens Grp. v. Town of Utica Plan. & Zoning Comm.***, 2003 WI App 109, ¶31, 264 Wis. 2d 662, 663 N.W.2d 833. Thus, the Board has discretion and flexibility to consider how a permit application could affect the "public health, safety and welfare, comfort, [and] convenience." Moreover, the mere fact that the "public health, safety and welfare" standard is general in nature does not impair the validity of that portion of the ordinance. *See **Edward Kraemer & Sons, Inc. v. Sauk Cnty. Bd. of Adjustment***, 183 Wis. 2d 1, 8, 515 N.W.2d 256 (1994). We have also held that

12

specific criteria are unnecessary in an ordinance, given the number of variables and the various factors that must be considered in a permit application. *Town of Grand Chute v. U.S. Paper Converters, Inc.*, 229 Wis. 2d 674, 684-85, 600 N.W.2d 33 (Ct. App. 1999). An attempt to specify each standard against which a proposed use would be measured would render the ordinance unduly long and cumbersome. *Smith v. City of Brookfield*, 272 Wis. 1, 8, 10, 74 N.W.2d 770 (1956).

¶23 Moreover, the purpose of the Gateway Overlay District is "to enhance the visual and aesthetic character" of development in the Gateway District. A zoning board may look to a statement of purpose as a guide when evaluating a conditional use permit.[4] *Id.* at 7-8. Enhanced visual and aesthetic attributes are achieved in part by imposing more rigorous sign limitations than those in the General Commercial District as to number, size, materials and type of the special exception.

---

[4] In its reply brief, Lamar argues a "well-established principle" provides that "aesthetic considerations cannot provide the sole basis for zoning requirements." In support of this purported proposition, Lamar cites *Highway 100 Auto Wreckers, Inc. v. City of West Allis*, 6 Wis. 2d 637, 650, 97 N.W.2d 423 (1959). However, that case stated: "In the matter of aesthetics, in *State ex rel. Saveland* [*Park Holding Corp. v. Wieland*, 269 Wis. 262, 69 N.W.2d 217 (1955)], we have declined to say that a police-power ordinance, in that case, zoning, may not be grounded on aesthetic considerations, alone …."

Similarly, the *Saveland Park* court stated:

> The concept of the public welfare is broad and inclusive. The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well balanced as well as carefully patrolled.

*Saveland Park*, 269 Wis. at 272 (citation and emphasis omitted).

¶24 In this regard, the Gateway District's regulations limit special exceptions to "only those special exceptions in the General Commercial District that are clearly compatible with the purpose and intent of the Gateway District." It is the six conditions that make the grant of this off-premises advertising sign "clearly compatible" with the purpose and intent of the Gateway Overlay District.

¶25 Finally, the permit conditions do not prohibit an accessory sign in this case. As mentioned, the Gateway District allows an accessory monument sign of up to 200 square feet in an area (both sides) for advertising products, facilities and services on the premises. The conditions in the present case in effect give the property owner a choice: (1) use the permitted monument sign (at the permitted size) to advertise on-premises matters (i.e., an accessory sign); (2) allow a permitted monument sign as an off-premises billboard; or (3) share a permitted off-premises billboard with on-premises advertising. Regardless of this choice, the property owner would still be allowed to have accessory wall signs at a size up to 1.5 times the linear front footage of a building. Accordingly, we conclude the Board acted according to law when imposing the conditions it did.

¶26 Lamar also argues the Board's decision was arbitrary, oppressive, unreasonable, and represented its will and not its judgment. A board's decision may be arbitrary if it relies upon a conclusory recitation of the appropriate standards of law and fails to explain its reasoning as it relates to the specific variance request. *See **Lamar Cent. Outdoor***, 284 Wis. 2d 1, ¶27. In that case, our supreme court remanded because a zoning board's variance did not "provide enough reasoning to allow a court to meaningfully review its decision." *Id.*, ¶3. The court explained:

> A board may not simply grant or deny an application with conclusory statements that the application does or does not

satisfy the statutory criteria. Rather, we expect a board to express, on the record, its reasoning *why* an application does or does not meet the statutory criteria. Without such a statement of reasoning, it is impossible for the circuit court to meaningfully review a board's decision, and the value of certiorari review becomes worthless.

*Id.*, ¶32 (citation omitted). The present case differs from *Lamar Central Outdoor* in that the Board here did not simply grant or deny an application with conclusory statements that the application did or did not satisfy statutory criteria. Nor did the Board fail to explain its reasoning as it related to the specific variance request.

¶27 Lamar argues that neither the Planning Commission nor the Town Board made findings of fact supporting the imposition of any conditions on its billboard permit application. Lamar further argues that upon a de novo review, the "Board's findings are set forth in their entirety in the meeting minutes"—which were "based, in part, upon the incorrect assumption of its members that the Planning Commission and Town Board had considered all relevant factors and correctly applied the law." Lamar also contends the Board's decision and the de novo hearing transcript "reveal a failure of the [B]oard members to engage in any consideration or debate of the evidence presented at the hearing." According to Lamar, the Board's decision "represents the quintessential 'rubber stamping,'" and it is "devoid of any reasoned consideration of the facts or the law."

¶28 Contrary to Lamar's contention, the Board members did not fail to engage in any consideration or debate of the evidence presented at the Board hearing. Rather, as we outlined above, the Board members conducted extensive discussion during the de novo hearing, and the Board explicitly stated its intent to place its reasoning on the record—and each member in fact attempted to flesh out his or her reasoning concerning the rationale for the permit's conditions. Among various other things, the transcript of the hearing reveals that Board members

15

discussed "[t]hat cluttered look," "attempt[ing] to minimize … the general clutter of signs along a corridor when you're coming or leaving a community," "protecting the aesthetics of the corridor and the [T]own," and "trying to limit the amount of signage that would be located off the right-of-way along State Highway 15 within the Gateway" in order to follow the "intent of the Gateway ordinance." In response to Lamar's argument that "it's not a small parcel," a Board member also stated:

> It may be an 8-acre parcel, but the majority of the visibility of those signs is going to be right down the road. It's going to be, you know, right along the road. So what's in back of that sign in terms of acreage isn't, at least to me, nearly as critical as what's going to be viewed driving down Highway 15.

¶29    We therefore reject Lamar's argument that the Board's decision is "devoid of any reasoned consideration of the facts or the law." A board does not act in an arbitrary or capricious manner if it sets forth a rational basis for its decision. *See* ***Van Ermen v. DHSS***, 84 Wis. 2d 57, 64, 267 N.W.2d 17 (1978). The transcript of the Board hearing reveals a rational attempt to explain its reasoning as it related to the specific variance request and the factors the Board was to consider in granting a special exemption.

¶30    Finally, we consider whether the Board might reasonably make its determination based on the evidence. This challenges the sufficiency of the evidence, which is determined in this context under the substantial evidence test. In applying the substantial evidence test on certiorari review, a court does not reweigh the evidence; certiorari is not a de novo review. *See* ***Roberts v. Manitowoc Cnty. Bd. of Adjustment***, 2006 WI App 169, ¶32, 295 Wis. 2d 522, 721 N.W.2d 499. Rather, we consider only whether the Board made a reasonable decision based upon the evidence before it. In making this determination, we take

into account all of the evidence in the record. ***Oneida Seven Generations Corp. v. City of Green Bay***, 2015 WI 50, ¶45, 362 Wis. 2d 290, 865 N.W.2d 162. We must uphold a board's decision as long as it is supported by substantial evidence, even if there is also substantial evidence to support the opposite conclusion. ***Sills***, 254 Wis. 2d 538, ¶11.

¶31     Here, the circuit court stated that the Board's findings "through the minutes were somewhat minimal," and its "findings make it difficult for the Court to draw conclusions just based on those." The court opined "ideally, we would have a better record." The court nevertheless analyzed "the history of the procedures done here, the [ordinance] and how that application took place here."

¶32     We acknowledge that a detailed or explicit written explanation of the Board's findings would have produced a better record. Nevertheless, municipal administrative decisions or findings of fact need not be in writing, and they may be inferred, if there is enough information from which a reviewing court may discern a board's reasoning from the record as a whole, including the context of the evidence. ***Oneida Seven***, 362 Wis. 2d 290, ¶¶45, 48-49. In other words, written findings are not necessary if there is evidence—or inferences drawn from the evidence—that would support such findings. ***Id.***, ¶49. And the weight to be accorded the evidence lies within the discretion of the board. ***Sills***, 254 Wis. 2d 538, ¶11.

¶33     In the present case, the reasons for the conditions can be discerned from the transcript of the Board hearing, as well as the December 8, 2017 letter from the Town zoning administrator. The December 8 letter provided extensive reasoning following each condition, and it analyzed aspects of the zoning ordinance or special exception standard under the facts.

17

¶34    Nevertheless, Lamar argues in its reply brief:

> That [December 8, 2017] letter does not purport to represent the findings of any Town decision-making body. The [Board]'s decision did not incorporate or reference the letter. The trial court decision does not mention the letter. The letter represents nothing more than the Town's after-the-fact attempt to justify the conditions.

However, Lamar ignores the fact that the December 8 letter was utilized by the zoning administrator and considered by the Board at its hearing, and it was entered into evidence at the hearing as Exhibit 6. Therefore, the December 8 letter is in the record.

¶35    As mentioned, the December 8, 2017 letter provided extensive reasoning following each condition. For example, with regard to Lamar's primary objection at the Board hearing, the December 8 letter stated as follows concerning condition 3:

> 3. The constructed sign will represent the maximum square footage allowed for a monument sign on the parcel and thus no other sign except wall signs will be permitted on the premises;
>
> *(Complies with §320-209A(4) the impact of the use is furthering the purposes of this chapter or the purposes of the zoning district in which the use is proposed or the adopted Comprehensive Plan of the Town. Complies with §320-209A(3) the proposed use will not create a look of clutter, garishness, glare or create an obnoxious noise level or would generate any other incompatibility with surrounding neighborhood. As noted, under the first condition, the property is zoned General Commercial within the Gateway Overlay District. In accordance with §320-56B, permitted signs within business and industrial districts are subject to specific restrictions. Furthermore, Article XXIII Gateway Overlay District establishes additional restrictions for permitted accessory signs related to size, location and design.)*

¶36 Lamar also underplays the zoning administrator's references to the December 8, 2017 letter during the Board's discussions at the hearing—in fact, the zoning administrator referred to the letter as "the findings of fact that were related in the Planning Commission meeting albeit not recorded in the minutes":

> So again if you refer to Exhibit Number 6 … we are presenting to you on behalf of the [T]own the conditions that were provided and the basis and the findings of fact that are related to this particular case. And if you go to Page 2, that goes through those following conditions that were applied and the findings of fact that were related in the Planning Commission meeting, albeit not recorded in the minutes.
>
> ….
>
> I can certainly go through the individual conditions and the requirements and the findings of fact that we presented as recommendations based on this exhibit, but I'm sure that you obviously have that in front of you. Those are the conditions, those are the requirements and the findings of fact that we presented administratively.

¶37 A Board member then asked the zoning administrator:

> MR. REIMER: And the [T]own put that Condition 3 in there because it was trying to minimize a bunch of different signs on a single property?
>
> [Zoning Administrator]: Correct, our interpretation –
>
> MR. REIMER: That cluttered look?
>
> [Zoning Administrator]: Cluttered, yep, exactly. Trying to limit the amount of signage that would be located off the right-of-way along State Highway 15 within the Gateway follows the intent of the Gateway ordinance.
>
> MR. ZILISCH: Okay.

¶38 Significantly, the Board then unanimously voted to deny Lamar's appeal after the Board members each stated their respective reasoning. As

mentioned, the reasons for the denial included, "[t]hat cluttered look;" "attempt[ing] to minimize … the general clutter of signs along a corridor when you're coming or leaving a community;" "protecting the aesthetics of the corridor and the [T]own;" and "trying to limit the amount of signage that would be located off the right-of-way along State Highway 15 within the Gateway" in order to follow the "intent of the Gateway ordinance." Taking into account all the evidence in the record, we conclude the Board's decision was such that reasonable persons might come to the determination in question. We therefore uphold the Board's decision.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).